HENGSTLER *v.* FLINT & PERE MARQUETTE RAILROAD CO.

CARRIERS—LIVE-STOCK SHIPMENT—CONTRACT.

  *1: H. delivered a car load of cows to defendant, as a common carrier, for shipment, without any special parol contract. He signed a written contract, which contained nothing contrary to public policy. *Held*, that he could not defend upon the ground that the written contract was signed in haste and without reading.

  2. H. accompanied the stock. *Held*, that it was his duty, and not that of the defendant, to see that the stock was fed and watered.

Error to Mason; McMahon, J. Submitted November 13, 1900. Decided January 29, 1901.

*Assumpsit* by Andrew Hengstler against the Flint & Pere Marquette Railroad Company to recover damages for injury to cattle shipped over defendant's road. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

  \* Head-notes by GRANT, J.

Plaintiff shipped a car load of cows from Ludington, Mich., to Charter Grove, Ill., a distance of 480 miles. The cows were loaded January 27th. Counsel for plaintiff erroneously state the time as the 28th. Plaintiff accompanied the car as care taker. The car left Ludington at 10 o'clock a. m. the 27th, and reached Flint, Mich., at 4 o'clock a. m. on the 28th. Plaintiff testified that the cows were uninjured when they reached Flint, except one, which got hooked down, and he left her at Flint. It is not claimed that the defendant was liable for this injury. Plaintiff unloaded the cows at Flint, watered and fed them, and left Flint over the Grand Trunk Railway at 4 o'clock p. m. of the 28th. He arrived at Charter Grove at 10 o'clock p. m. January 29th, the journey occupying about 60 hours from Ludington to Charter Grove. He was delayed 4 hours at one place, 4 hours at another, and 8 hours in the yards of the Illinois Central Railroad Company in Chicago. The cows were not unloaded, watered, or fed from the time they left Flint until they reached Charter Grove. Plaintiff claims that the cows were injured on the journey in consequence of these delays, and brought suit to recover such damages. The court directed a verdict for defendant.

*Fitch & Reek,* for appellant.

*M. B. Danaher* (*Frederick W. Stevens,* of counsel), for appellee.

Grant, J. (*after stating the facts*). 1. The declaration contains three counts, each one of which is based upon the theory that the plaintiff was a shipper of live stock, that he delivered said stock to defendant, and that the defendant undertook and promised to take and use due and proper care and diligence in and about carrying and conveying the said property from Ludington to Charter Grove. No special contract for carriage, oral or written, is set up in the declaration. It is the ordinary declaration where goods are delivered to a railroad com-

pany for carriage in the usual course of business. After the cows were loaded, plaintiff received his bill of lading, and signed a contract providing that "said shipper is, at his own sole risk and expense, to load, take care of, and feed and water said stock while being transported;" also limiting defendant's liability for loss or damage to negligence upon its own road, and not upon that of the connecting carrier. Plaintiff claims that this contract was presented to him for signature as the train was ready to start; that he had not time to read it, and did not read it; that he had a special oral contract for the shipping of these cows, which controls, rather than the written contract. Authorities are cited in support of the proposition. Plaintiff testified to conversations with defendant's agents at Ludington, upon which he bases his special contract. Being asked to state those conversations, he testified:

"Well, we wanted to ship a car of cattle to my farm, and I inquired if I could get a regular cattle car, and they said they did not think so; it is unusual for them to get any such thing as that here; it is not used; and then Mr. Gordon said he would get another car for me, which I could take through to Charter Grove, Ill., and I could buy some lumber and make a winter car out of it."

This conversation does not disclose any definite agreement for shipment. The mere statement that the car could be shipped through to destination is not an agreement on the part of the defendant to be liable for all the delays and acts of negligence on the part of the connecting carrier. It was not an agreement to feed and water the cattle. This duty belongs to the shipper. *Heller* v. *Railway Co.*, 109 Mich. 53 (66 N. W. 667, 63 Am. St. Rep. 541). It is not necessary, therefore, to consider the case upon the basis that plaintiff had a special parol contract differing from the written contract he signed previous to shipment. The provisions of this contract have been sanctioned by the decisions of this court. *McMillan* v. *Railroad Co.*, 16 Mich. 79 (93 Am. Dec. 208); *Smith* v. *Express Co.*, 108 Mich. 572 (66 N. W. 479). There

being no special parol contract, and there being nothing in the written contract contrary to public policy, plaintiff cannot now assert that the written contract is not binding because he signed it in haste, without reading.

2. Aside from this, it appears that the only injury the cattle could sustain was from failure to water and feed them. Plaintiff claims that he had no opportunity to do so upon the journey, after leaving Flint. He testified:

"I spoke to the conductor and brakeman about feeding and watering whenever I had a chance. I told them the cattle would need a little water and feed, and they told me they could not give it to me."

This testimony is not sufficient to fasten upon the defendant or any connecting carrier liability for damages resulting from failure to water and feed. The company was under no obligation to do so. Plaintiff does not testify that he could not have watered and fed them during the eight-hours stay in the yards of the Illinois Central at Chicago. It was his duty to see that they were then watered and fed. The language used by the circuit judge upon the trial was entirely justifiable:

"He had no right to go through from Flint to Charter Grove without feeding and watering the cattle, and then expect the railroad to pay him for their depreciation and injury to them. It is idle to say a man could not feed a car load of cattle in Chicago. Of all places on earth, that is where he could feed them. Their arrangements there are perfect for that very purpose. If he allowed them to starve for lack of food and water, he cannot claim this railroad company is to blame for it. If he had been obliged, on account of the delay of the railroad, to lose time in feeding and watering, and put to extra expense, there would be some sense to such a claim; but to allow the cattle to starve for food and water, and to pass through Chicago without feeding them, and then claim that the railroad company should pay him for the cattle themselves, I think is a preposterous claim, and does not come under what is alleged in the declaration and set up against the company."

Judgment affirmed.

The other Justices concurred.