SLOMAN v. NATIONAL EXPRESS CO.

1. EXPRESS COMPANIES—SHIPPING RECEIPTS—CONDITIONS.
    Internal revenue stamps placed on that portion of a shipping receipt containing the conditions of the contract do not amount to an erasure of any of the conditions.

2. SAME—VERBAL AGREEMENT.
    Where plaintiff shipped goods by express, taking a receipt for

the same, signed by the company's agent, containing the conditions upon which the shipment was made, parol testimony was inadmissible to show a verbal agreement that the goods should reach their destination at a certain time.

Error to Wayne; Rohnert, J. Submitted February 5, 1903. (Docket No. 74.) Decided July 8, 1903.

*Assumpsit* by Mark Sloman, Whiting A. Tillotson, and Milton M. Sloman, copartners as M. Sloman & Company, against the National Express Company, for delay in the transportation of goods. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Affirmed.

*Adolph Sloman*, for appellants.

*Russel & Campbell* (*Henry M. Campbell*, of counsel), for appellee.

HOOKER, C. J. The plaintiffs shipped from Detroit, Mich., 14 bales of furs, consisting of coons, skunks, mink, and rats, to themselves, at Leipsic, Germany, in March, 1900, by the defendant company, prepaying the charges. At the time of shipment they received from the defendant the following receipt:

"No. 78.                              March 31st, 1900.
"Mr. M. Sloman, to National Express Company, for transportation, 14 bales from ——, weight 3,940 pounds. Our charges $135.75. Received payment for the company;
                                    "GEORGE MORROW.
[Underneath]    "M. SLOMAN, Leipsic, Germany."

On the back of the receipt was printed the following:

"This company transacts a general express and freight forwarding business to and from Europe by fast mail and passenger steamers, having offices in Liverpool, Berlin, and Bremen, and agents at the principal cities abroad."

The plaintiffs sought to show that the goods were shipped under an oral contract whereby the defendant

134 MICH.—2.

undertook that said goods should be delivered in Leipsic by the time that one of the plaintiffs' firm should arrive there, and upon the representation that the defendant had express transportation to, and an agent at, Leipsic. The court held that the shipping receipt hereinafter shown constituted the contract between the parties, and refused to permit plaintiffs to show an agreement to deliver in Leipsic at or before Mr. Sloman's arrival. It appeared in the case that there was no express transportation in Germany, as understood by us, but that there were three methods of transportation of freight, of varying expedition,—one which compares with our way freight; a second, where bulk is not broken, and which is more expeditious than the former; and a third, which is more prompt than either of the others. These goods went by the second.

It is the claim of the plaintiffs that these furs crossed the ocean on the same steamer with their representative, and he landed at Bremen, 150 miles from Leipsic, on Thursday, April 12th. The Fur Fair at Leipsic opened on Sunday, the 22d of April. Sloman reached Leipsic on the 17th, and the furs arrived on Monday afternoon, too late to do anything with them on that day. This action was brought to recover damage for the shrinkage in the value of these furs in that market between the opening of the fair on Sunday, and the time when they arrived. A verdict was directed for the defendant, the court instructing the jury that the receipt constituted the contract; that the express company was the initial carrier, and was not liable for loss occasioned by the default of the carrier in Germany to deliver promptly; and, further, that the delay was one of only 24 hours, which delay was not shown to have been negligent. Plaintiffs have brought error.

The record shows that the plaintiffs are furriers in Detroit, and previous to this occasion had been in the habit of doing business with the defendant. They had in their possession a blank shipping receipt book furnished by the defendant, which was in frequent use by them, the practice being to use one line for each shipment; the blanks

being filled in the following order by plaintiffs, except the last, which was for the signature of defendant's agent who should receive the goods, viz.: "Date. Description. Value or Amount. Addressed to. Destination. Receipted by." This line was filled by Mark Sloman, one of the plaintiffs. The leaf on which this receipt was written contained the following heading:

"*Not Negotiable.*
        "National Express Company.
   "Received of ——————————————·———————————

   "The property hereinafter described, to be forwarded subject to the terms and conditions of the company's regular form of receipt, printed on inside front cover of this book.   *   *   *

   "This company issues travelers' cheques and money orders available everywhere; also forwards shipments to and from Europe by the fastest steamships."

   Upon the back was the following:

            "National Express Company.
              "Notice to Shippers.
 "(*Not Negotiable.*)
   "All properties which may be receipted for on this company's blank receipts No. 53 we undertake to forward to the nearest point to destination reached by this company, subject to the following conditions, namely:

   "1. This company is not to be held liable for any loss or damage except as forwarders only, nor for any loss, damage, or delay by fire, by the dangers of navigation, by the act of God or of the enemies of the government, by the restraints of government, mobs, riots, insurrections, pirates, or from or by reason of any of the hazards or dangers incident to a state of war.

   "2. Nor shall this company be liable for any default or negligence of any person, corporation, or association to whom the described property shall or may be delivered by this company, for the performance of any act or duty in respect thereto, at any place or point off the established routes or lines run by this company; and any such person, corporation, or association is not to be regarded, deemed, or taken to be the agent of this company for any such purpose, but, on the contrary, such person, corporation, or

association shall be deemed and taken to be the agent of the person, corporation, or association from whom this company received the property above described. It being understood that this company relies upon the various railroad and steamboat lines of the country for its means of forwarding property delivered to it to be forwarded, it is agreed that it shall not be liable for any damage to said property caused by the detention of any train of cars or of any steamboat or other vehicle upon which such property shall be placed for transportation; nor by the neglect or refusal of any railroad company, steamboat, or other transportation line to receive and forward the said property.

"3. It is further agreed that this company is not to be held liable or responsible for any loss of or damage to said property, or any part thereof, from any cause whatever, unless in every case the said loss or damage be proved to have occurred from the fraud or gross negligence of said company or its servants; nor in any event shall this company be held liable or responsible, nor shall any demand be made upon it, beyond the sum of fifty dollars, at which sum said property is hereby valued, unless the just and true value thereof is stated herein; nor upon any property or thing unless properly packed and secured for transportation; nor upon any fragile fabrics, or any fabrics consisting of, or contained in, glass."

"9. The party accepting this receipt hereby agrees to the conditions herein contained."

Upon this page there was one entry under date of March 13th, one March 23d, two March 28th, three March 31st, two April 7th, one April 18th, and one May 2d, each receipted by defendant's agent. The proof shows that the line covering the shipment in question was signed on the afternoon of that day, defendant's agent going to plaintiffs' place of business for the purpose. The top of said page, when offered in evidence, was covered by internal revenue stamps, 10 in all; 9 being 1 cent, and 1 being 2 cents, in denomination; 11 cents, in all, for the 11 entries. Plaintiffs' testimony shows that they were furnished and put on by them. A claim was made that this should prevent the printing beneath them from being treated as a part of the writing. This was the fifth entry on the page,

and the fourth stamp applied to this, presumably, so that at that time only about half of it was covered.

The plaintiffs sought to show that it was the intention of Sloman to attend this fair with furs for sale, and that the defendant was notified of it, and represented to the plaintiffs that it had an express through to Leipsic, and an express agent there, and would ship them by express over its own line, and get them there before Mark Sloman should arrive, and that, relying on these representations, they delivered the furs to the defendant for transportation on the morning of March 31st, and in the afternoon the defendant's agent receipted for the same. The court refused to admit the testimony on the ground that the contract was in writing, and could not be varied by parol. He held that the stamps should not be treated as an erasure of any portion of the heading, and that testimony tending to show that the parties agreed to give the writing a meaning and effect contrary to its terms was not admissible. There was no error in this.

On directing a verdict, the court held that the shipping receipt was given and accepted as the contract; that the shipment was by express methods in the respective countries; that the defendant was not liable for the negligence of connecting carriers; that, until the goods reached Bremen, they were shown to have gone by the fastest transportation; that they might have been transported from there to Leipsic by a faster train, but that, even if the defendant were responsible for such delay, there was no proof that the goods suffered depreciation during that period.

The declaration counts upon the alleged breach of contract to transport said furs to Leipsic by express, and deliver them there by the time that Mark Sloman should arrive. If it be true that Sloman had assurances that the furs would reach Leipsic before he did, there is nothing to indicate any deceit, and the inference is strong that it was intended and understood as an opinion, and not a warranty. The matter was not left to rest on the oral arrange-

ment, however. In accordance with the interview, Sloman packed and sent the goods, filled out the shipping receipt as usual, and later in the day secured the signature of defendant's agent to it; thereby putting in writing the agreement. There is no chance to claim that he should not be bound, as in some cases cited, where, owing to fraud, it was held that the writing was not the contract. It has been repeatedly held that such a receipt constitutes the contract, and that it cannot be varied by parol. See *McMillan* v. *Railroad Co.*, 16 Mich. 80 (93 Am. Dec. 208); *Smith* v. *Express Co.*, 108 Mich. 577 (66 N. W. 479); *Hengstler* v. *Railroad Co.*, 125 Mich. 530 (84 N. W. 1067); *Stange* v. *Wilson*, 17 Mich. 342; *Ferguson* v. *Arthur*, 128 Mich. 297 (87 N. W. 259); *McCray Refrigerator, etc., Co.* v. *Woods*, 99 Mich. 269 (58 N. W. 320, 41 Am. St. Rep. 599); and other cases cited.

Under the proofs, the court could not have avoided directing a verdict for the defendant.

The judgment is affirmed.

The other Justices concurred.