## DEE v. SAN PEDRO, LOS ANGELES AND S. L. R. CO.

No. 3035.  Decided August 6, 1917.  (167 Pac. 246.)

1. VENUE—ASSIGNMENT OF CAUSE OF ACTION—ASSIGNOR'S RESIDENCE. Whenever a cause of action is assigned without consideration, the assignor continuing to be the real party in interest, the assignee is merely a trustee or collection agent, and the assignor, the real party in interest, is the person in whose favor the cause of action arose within Comp. Laws 1907, section 2931x1, providing that all transitory causes of action arising without the state in favor of residents shall be brought and tried in the county where such resident resides, in the county where the principal defendant resides, or, if the latter is a corporation, in the county where such resident resides, or in the county where such corporation has its principal place of business, etc. (Page 174.)

2. VENUE—CHANGE—FICTITIOUS ASSIGNMENT. An assignment of a cause of action, with or without consideration, made solely to confer jurisdiction on the court in which the action is commenced, thereby depriving defendant of a privilege afforded by the statutes relating

Dee v. San Pedro, L. A. & S. L. R. Co., 50 Utah 167

to venue, will not prevail against a proper proceeding to change the place of trial. (Page 175.)

3. CORPORATIONS—VENUE—PERSONAL PRIVILEGE—WAIVER—STATUTE. Comp. Laws 1907, section 2931x1, conferred a mere personal privilege on a corporation sued on a cause of action arising without the state which could be waived by the corporation. (Page 175.)

4. CORPORATIONS—VENUE—PRIVILEGE—INVOCATION—STATUTE. It required a seasonable objection or motion in some form on the part of defendant corporation, sued on a cause of action arising without the state, to invoke its privilege, under Comp. Laws 1907, section 2931x1, to be sued in the county where it had its principal place of business, etc., and to bring it within the cognizance of the court. (Page 175.)

5. VENUE—APPLICATION FOR CHANGE. If the application for change of venue is based on the ground that the action is brought in the wrong county, it should negative any facts and circumstances under which such county would be the proper one. (Page 175.)

6. CORPORATIONS—VENUE—RIGHT TO CHANGE—WAIVER. Where defendant corporation moved for change of venue without negativing the fact that plaintiff was a bona fide purchaser of the cause of action, in which case the action was commenced in the proper county, and thereafter it developed on cross-examination of a witness that plaintiff was not a bona fide purchaser, but defendant did not renew its motion, assigning specifically the newly discovered ground, defendant waived its privilege of change of the place of trial. (Page 176.)

7. APPEAL AND ERROR—HARMLESS ERROR. In an action for damage to a shipment of horses, error in overruling defendant railroad's motion for nonsuit on the ground that there was no proof of the terms and stipulations of the contract of transportation sued upon was rendered harmless by defendant's introducing the contract in evidence, thereby obtaining the full benefit of its terms.[1] (Page 178.)

8. APPEAL AND ERROR—HARMLESS ERROR—EVIDENCE. In an action against a railroad for damages to a shipment of horses, where the jury did not allow as damages for any one of the horses a sum greater than the value agreed upon between the parties in the written contract, the road was not prejudiced by the court's ruling permitting proof of value at destination instead of at shipping point, as provided in the contract. (Page 179.)

9. PLEADING—AMENDMENT OF COMPLAINT—EFFECT. In an action against a railroad for damages to a shipment of horses, where the original complaint declared for damages in the sum of $665, and was afterwards amended to limit the territory within which damages were claimed to the states of Nevada and California, and a horse, which afterwards died, having been injured in Utah, was worth at

[1] *Boyd* v. *S. P., L. A. & S. L. R. R. Co.*, 45 Utah, 449, 146 Pac. 282.

least $150, verdict for $580 was not excessive on the ground that the amendment removed the horse from the cause of action and reduced the ad damnum of the complaint to $505. (Page 180.)

10. CARRIERS—CARRIAGE OF STOCK—LIMITATION OF LIABILITY—EFFECT. Where a contract for the transportation of horses limited claim for damages on account of any one animal to $100, fixed as the declared value, and the shipper sold an injured mare for $75, the shipper could recover $80 damages on account of injuries to the mare, less than the declared value, and was not limited to a recovery of $25.[1] (Page 181.)

11. CARRIERS—CARRIAGE OF LIVE STOCK—LIABILITY FOR DAMAGE BY REASON OF DEPRIVATION OF FOOD AND WATER. A railroad, not having provided facilities for feeding horses shipped while they were in its charge, and before delivery to the consignee, became liable for any damage sustained by the shipper by reason of the animals having been deprived of food for a period in excess of 36 hours, whether the horses were in the cars or in the stockyard awaiting delivery, the federal statute permitting the confinement of live stock without food and water by request of the shipper for thirty-six hours. (Page 184.)

12. APPEAL AND ERROR—REVIEW—VERDICT. The Supreme Court cannot disturb the verdict of a jury sustained by substantial evidence. (Page 185.)

13. CARRIERS—CARRIAGE OF LIVE STOCK—DAMAGES—SUFFICIENCY OF EVIDENCE. In an action against a railroad for injuries to a shipment of horses, evidence *held* to sustain an award of damages of $20 per head from the horses having been deprived of food during more hours than was permissible under federal regulation. (Page 187.)

14. APPEAL AND ERROR—PRESUMPTION—INSTRUCTIONS FOLLOWED. Unless it can be shown that the jury considered other causes of damage than that submitted to it by the court, it must be presumed that it followed the court's instruction, and that the damages awarded were exclusively for the injuries limited by the instruction. (Page 188.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Claude M. Dee against the San Pedro, Los Angeles and Salt Lake Railroad Company, a corporation.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Dana T. Smith* for appellant.

*C. C. Richards* for respondent.

---

[1] *Baird* v. *D. & R. G. R. Co.,* 49 Utah, 58, 162 Pac. 79.

#### APPELLANT'S POINTS

It is manifest that this assignment was merely for the purpose of endeavoring to give the Weber County Court jurisdiction. Such an assignment is not sufficient to give the court jurisdiction.

"Colorable, collusive or fictitious assignments of causes of action, made merely to evade the provisions of venal statutes, being a fraud upon the court, are void and will not operate to give the assignee the benefits accorded plaintiffs under the statutes." 40 Cys., p. 103; *Diffenderffer* v. *Rowden,* 83 Mo. App. 268; *Parsons* v. *Brown,* 50 New Hampshire 484; *Waldrep* v. *Roquemore,* 127 S. W. 248; *Taylor* v. *Sturgis,* 29 Tex. Civ. App. 270; 68 S. W. 538; *Jones* v. *Austin,* 6 Tex. Civ. App. 505; 26 S. W. 144. The rule laid down in the United States Courts, where citizenship of the parties is the jurisdictional ground, and where the principal is the same as it is in the case at bar, is that the court, in determining the question of jurisdiction, looks to the citizenship of the real parties in interest, not to that of merely nominal parties. *Huff* v. *Hutchinson,* 14 Howard, 586; 14 Law Edition, 553; *Browne* v. *Strode,* 5 Cr. 303; 3 Law Ed. 108; *McNutt* v. *Bland,* 2 Howard, 9; 11 Law Ed. 159; *Myuse of Markley* v. *Baldwin,* 112 U. S. 490; *Indiana ex rel. Stanton* v. *Glover,* 155 U. S. 513; *Williams* v. *Ritchie,* 3 Dill. 406; *Ruckman* v. *Palisade Land Co.,* 1 Fed. 367; *Woolrich* v. *McKenna,* 8 Fed. 650; *Wiggins* v. *Bethune,* 29 Fed. 51; *Voss* v. *Ninebar,* 68 Fed. 974; *Blumenthal* v. *Craig,* 81 Fed. 320.

#### RESPONDENT'S POINTS

A just and liberal construction of section 2931XI Compiled Laws of 1907, means that when a resident of the state has a cause of action which is transitory and arose out of the state he may sue either in the county where he resides or in the county where the principal defendant resides, or if such defendant is a corporation then where it has its principal place of business. The legislation was not intended to hinder or prevent assignments of causes of action for value and in good faith, in the due course of business, or to make them more

onerous to collect by the assignees than they would be by the assignors. The intent was and is to allow any plaintiff to commence suit in his own county or in the defendant's county, whichever he prefers. Upon this point the case of *Stone* v. *Railroad Co.* reported in 32 Utah, 185-187, is directly in point.

If, however, the court should hold that our contention is unsound the defendant was not entitled to have a change of venue granted for neither the pleadings, the demand, nor the affidavit upon which the court acted disclosed that the plaintiff was not a resident of Weber County (wherein the suit was commenced) nor did they, or either of them, charge or intimate that the assignment of the cause of action had not been *bona fide* and for a valuable consideration, nor that the assignment had been made for the purpose of conferring jurisdiction upon the court to hear the cause. Under such a state of facts the trial court, and this court, will presume that the trial court had jurisdiction. 40 Cyc. 153, 154, 157, 160, 165; 4 Enc. P. & P. 431, 432, 434, 435, 437; *Granger's Union* v. *Ashe,* 12 Cal. App. 143, 106 Pac. 890; *Adamson* v. *Bergen,* 15 Colo. App. 396, 62 Pac. 630; *De Wein et al.* v. *Osborn,* 12 Colo. 407, 21 Pac. 190; *Chase et al.* v. *Railroad Co.,* 83 Cal. 468, 23 Pac. 533; *Pioneer S. & L. Co.* v. *Peck,* (Tex.) 49 S. W. 169.

THURMAN, J.

Appeal from a judgment of the district court of Weber County. The action is for damages caused by injuries to certain horses transported by appellant as a common carrier.

The complaint, in substance, alleges that one Sheffer delivered the horses, the property of Sheffer and Stewart, to defendant at Salt Lake City, to be transported to Stewart at Los Angeles under a written agreement executed by the parties for safe transport and delivery; that there were twenty-three horses, of the value of $4,000; that Sheffer and Stewart agreed to pay for the transportation $216; that the defendant did not safely deliver said animals according to agreement, but in a negligent and careless manner, so that while on board the train outside of Utah, and in the states of Nevada and California, and prior to their delivery, three of the horses were

injured and thereafter died, and the remaining twenty head were deprived of food and water and became starved, shrunken, and emaciated, all to the damage of the owners in the sum of $665; that the cause of action was thereafter assigned to the plaintiff.

The original complaint did not allege that the damages occurred outside of Utah, and the defendant appeared and demurred to the complaint, and at the same time filed an affidavit to the effect that defendant is a corporation with its principal place of business at Salt Lake City, Salt Lake County, Utah; also an affidavit of merits with demand in writing that the trial of the action be had in Salt Lake County, under the provisions of chapter 93, Sess. Laws Utah 1913. Thereafter the demurrer and application for a change of venue came on for hearing, and the plaintiff was permitted to amend his complaint so as to show that the cause of action arose outside of the state of Utah. The demurrer was overruled, and the motion for a change of venue denied.

Defendant filed an answer admitting that it received the horses under a written agreement to transport them to Los Angeles; that some of the horses were injured. For want of knowledge defendant denied the assignment to plaintiff, and, generally, denied the remaining allegations of the complaint. Further answering, defendant pleaded, in effect, the terms of the written agreement, the material parts of which will be referred to as the same become necessary in the course of this opinion. Defendant also alleged the court had no jurisdiction.

Plaintiff filed a reply admitting and denying certain allegations of new matter in the answer.

The case was tried to a jury, resulting in a verdict for plaintiff in the sum of $712.02, including interest, for which sum judgment was entered.

Appellant has alleged numerous assignments of error. Such as have not been waived will be considered and disposed of in the order presented in appellant's brief.

The application for a change of venue was made under the provisions of chapter 93, Sess. Laws Utah 1913. The statute re-enacts sections 2932 and 2933 of the Revised Statutes of

1898, which had been repealed by the Legislature in 1901 (Laws 1901, c. 23). The sections, as amended, provide in part:

"In all other cases (meaning cases not included in the preceding sections of Comp. Laws, 1907) the action must be tried in the county in which the defendants, or some of them, reside at the commencement of the action," etc.

The application, affidavit and demand for change of venue were regular and in due form. The proceeding was regular in every respect and sufficient, as the case then stood, to entitle defendant to have the action transferred to Salt Lake County. At this stage of the proceeding, however, the plaintiff obtained permission of the court to amend his complaint by alleging that the cause of action arose outside of Utah and in the states of Nevada and California. By this amendment the case was brought within the provisions of the next preceding section of Comp. Laws Utah 1907, viz. section 2931x1, which, in part, provides:

"All transitory causes of action arising without this state in favor of residents of this state shall, if suit is brought thereon in this state, be brought and tried in the county where such resident resides, or in the county where the principal defendant resides, or if the principal defendant is a corporation, then in the county where such resident resides or in the county where such corporation has its principal place of business, subject however, to a change of venue as provided by law," etc.

The amendment destroyed the effect of appellant's motion by materially changing the conditions which existed at the time the motion was made. The record does not disclose that the motion was renewed or a new one filed, but, as respondent in this brief admits that appellant renewed its motion after the complaint was amended, we will assume that such was the case. If it was renewed, however, it must have been in the same form as the one made before the complaint was amended. The sufficiency of the motion, under the changed conditions, is therefore drawn sharply in question.

Appellant has assigned as error the overruling of the motion and earnestly contends that the motion should have been granted. Before proceeding to a determination of this question it is necessary to arrive at a rational and intelligent understanding of the real point in controversy between the parties. Appellant contends that, under the section of the statute last quoted, the cause of action arose in favor of Sheffer, one of the owners of the property, residing in Cache County, and that therefore either Cache County or Salt Lake County where appellant's principal place of business is located, was the county in which the action should have been commenced; that, even though the assignee might have had the right to sue, as plaintiff, still he should have sued in one or the other of the counties named. On the other hand as, we understand it, the respondent contends that the assignee is the person in whose favor the cause of action arose in the sense of the statute in question, and therefore the action was properly commenced in the county of his residence, to wit, Weber County. These contentions of the parties involve a construction of the statute in question, and for that reason the question assumes an importance outside of the present case. The court is of the opinion that both contentions are right under certain conditions and, under certain other conditions both are wrong.

We believe that both reason and authority on this subject support the view that, whenever a cause of action is assigned without consideration, the assignor remaining and continuing to be the real party in interest, the assignee is nothing more than a trustee or collection agent, and the assignor, the real party in interest, is the person in whose favor the cause of action arose in the sense of the statute, and the county where he resides, or the county where the defendant resides, or, if a corporation, where it has its principal place of business, is the county in which the action should be commenced.

The court is further of the opinion that, if it should be made seasonably to appear that an assignment of a cause of action, either with or without consideration, is made for the

sole purpose of conferring jurisdiction upon the court
in which the action is commenced, thereby depriving          2
defendant of a privilege afforded by the statutes re-
lating to venue, such attempt should not be permitted to
prevail against a proper proceeding to change the place of
trial.

"Colorable, collusive, or fictitious assignments of causes of action made
merely to evade the provisions of venue statutes being a fraud upon the
court are void, and will not operate to give the assignee of the benefits
accorded plaintiffs under the statute." 40 Cyc. 103, and cases cited.

The foregoing excerpt from Cyc. is quoted in appellant's
brief, as are also the cases cited in the note. They are all in
point.

The remainder of the paragraph from which the above is
quoted reads as follows:

"The rule is otherwise, however, as to the venue of an action by a bona
fide assignee for a valuable consideration who has been guilty of no fraud
or collusion."

See, also, *National Exchange Bank* v. *Foley et al.*, 27 Tex.
Civ. App. 450, 66 S. W. 249; *Leahy* v. *Ortiz*, 38 Tex. Civ.
App. 314, 85 S. W. 824.

The district court of Weber County, being a court of gen-
eral jurisdiction, had jurisdiction of the subject-matter of this
action. The statute under review fixing the venue conferred
a mere personal privilege which could be waived by
the privileged party. 40 Cyc. 110. It required a sea-       3, 4, 5
sonable objection or motion in some form to invoke
the privilege and bring it within the cognizance of the court.
This was done in the case at bar, as before stated, prior to the
complaint being amended, and at that time was in due form,
because, as the case then stood, it was within the venue statute
as amended by Laws Utah 1913, c. 93. But when the com-
plaint was amended, and the cause of action was alleged to
have arisen outside of the state, the case was then brought
within the provisions of another and different section of the
statute, and the question presented for consideration is: Was
the motion of defendant sufficient as an application for change
of venue in view of the altered situation caused by the amend-
ment?

"If the application is based on the ground that the action is brought in the wrong county, it should negative any facts and circumstances under which such county would be the proper one." 40 Cyc. 154.

See *Adamson* v. *Bergen,* 15 Colo. App. 396, 62 Pac. 629; *Granger's Union* v. *Ashe,* 12 Cal. App. 143, 106 Pac. 889; *Pearce* v. *Wallis,* 58 Tex. Civ. App. 315, 124 S. W. 496. Appellant's motion to change the place of trial nowhere negatived certain conditions under which Weber County may have been the proper county. It did not negative the fact that plaintiff may have been a bona fide purchaser of the cause of action, in which case, as we have seen, the action was commenced in the proper county. It did not negative the fact that Sheffer was a resident of Weber County, which should have been done if appellant's construction of the statute was correct. It is true respondent for some reason supplied this omission by filing affidavits showing that Sheffer was not a resident of Weber County, and if we concede that this was sufficient on that point, still the omission to negative the fact that plaintiff was a bona fide purchaser was a fatal defect in the proceeding which justified the court in denying the motion.

During the trial of the case before the jury, however, it developed on cross-examination of Sheffer, a witness for the plaintiff, that plaintiff was not a bona fide purchaser of the cause of action; that he paid no consideration for it whatever; that he was a mere collection agent for Sheffer and Stewart, the real parties in interest. Appellant insists that, inasmuch as this was the first knowledge appellant had of the fact, it should be permitted to avail itself of the information thus received even at that stage of the case in support of its motion to change the place of trial. Under the view we have already expressed, if this fact had been shown at the proper time and at the proper stage of the proceeding, the appellant would have been entitled to have the cause transferred to either Cache or Salt Lake County; but the serious question is: Can appellant avail itself of information obtained on the trial of a case on its merits where, as in this case, it did not renew its motion and assign specifically the newly discovered ground for the motion? No motion was offered, no showing was made, and no objection was inter-

posed to further proceeding with the trial. It was not even suggested in the motion for a nonsuit which was made after plaintiff rested his case. Can a party on a question of this kind, which, as before stated, is only a question of personal privilege, after he obtains information upon which he might invoke that privilege, proceed with the trial upon the merits of the cause without jeopardizing the privilege itself? Can he thus avail himself of the chance of obtaining a favorable result on the merits of the case, and if he fail in that, then be heard to complain on the grounds that the trial was had in the wrong county? We think not. It is contrary to every rule of practice with which we are familiar. We do not wish to be understood as holding that, even if appellant had objected to proceeding with the trial under the circumstances mentioned, it could have effected a change of venue at that stage of the proceedings; but, had seasonable steps been taken as soon as practicable after appellant became informed of the fact, a different question would have been presented, which, however, we need not attempt to decide in this opinion.

As we understand the record, the trial court did not err in denying appellant's motion for a change of venue, and all the assignments based upon this alleged error must therefore fail.

The next matter complained of by appellant in the order of its argument is the omission of plaintiff to prove the written agreement referred to in plaintiff's complaint under which the horses were shipped to Los Angeles, and the failure of the court to compel plaintiff to make such proof. Appellant raises this question under its twelfth assignment of error, in which it is alleged that the court erred in overruling defendant's motion for a nonsuit, to which ruling defendant excepted.

The principal grounds alleged in support of defendant's motion for a nonsuit were that there was no proof of the terms and stipulations of the contract sued upon, the written contract alleged in the complaint not having been introduced in evidence, and no attempt to prove its terms and stipulations as secondary evidence.

The motion for a nonsuit was overruled by the court apparently upon the grounds that, having admitted that there was a contract entered into for the transportation of the animals, the burden was on the defendant to prove any special terms of the contract that might limit its liability. We need not discuss the reasons assigned by the court whether the same were valid or invalid, or whether the ruling amounted to a reversible error at the time it was made. Whatever might have been the effect of the order overruling the motion for a nonsuit was rendered entirely harmless and nonprejudicial by the defendant itself. It introduced the contract in evidence, and thereby obtained the full benefit of its terms. A party to an action may not retain the benefit of an exception to the exclusion of evidence after he has had the full benefit of the evidence itself. There is no difference between such a case and the contention of appellant on the point in question. This court has heretofore determined this identical question in a case in which appellant was a party defendant. *Boyd* v. *S. P., L. A. & S. L. R. R. Co.,* 45 Utah, 449, 146 Pac. 282. This assignment must also fail.

Appellant, under assignments 7, 8, 9, 10, and 11, excepted to the rulings of the court in permitting respondent, over appellant's objection, to prove the value of the animals shipped at Los Angeles. It was provided in the written agreement introduced by appellant that all claims for loss or damage to each of the animals shipped should be adjusted on the basis of value at the time and place of shipment, not exceeding the declared value which had been fixed at $100 per head.

Appellant contends, and with much reason and force, that permitting respondent to prove the value of the animals at Los Angeles, the point to which they were shipped, instead of at Salt Lake City, the place from which they were shipped, was in contravention of the terms of the contract, and therefore error. We are of the opinion that this contention of appellant is well founded, and if the error is prejudicial, the assignments of error on this point should prevail. Was the error prejudicial? The evidence admitted over appellant's objection could by no possibility affect the value of more than

three of the horses in question: (1) A horse described as a bay gelding, injured in Utah; (2) another horse, which died from injuries received; (3) still another injured, which plaintiff sold for $75. The horses were of the actual value of $175 per head.

The court, by instruction, excluded from the jury all consideration as to the horse injured in Utah, because it was outside the claim made by plaintiff. As to the second, which died, the jury allowed the sum of $100, the declared value under the contract. For the third animal the jury allowed the plaintiff $80, which was less than the declared value, and, besides this, the plaintiff had sold the animal for $75. Thus it appears the jury did not allow for any one of said horses a sum greater than the value agreed upon between plaintiff and defendant in the written contract. How then was appellant prejudiced by the ruling of the court permitting proof of value at Los Angeles instead of at Salt Lake city, as provided in the shipping contract? There was no direct proof at all as to the value in Salt Lake City, the place where the value ought to have been established, but there was indirect proof of a very satisfying character. It was shown that the horses were purchased at Pocatello, Idaho, for the sum of $125 each; thence shipped via Salt Lake City to Los Angeles to a higher market. They were rebilled at Salt Lake City. The presumption is almost conclusive that the horses were worth more in Salt Lake City than in Pocatello, because they were nearer the better market. In addition to this, as stated by respondent, appellant requested the court to instruct the jury as to the animal that died that it could not find a verdict for more than $100, thus recognizing the right of the jury to find to that extent, notwithstanding the absence of direct proof of the value at Salt Lake City. The court so instructed the jury, and the jury followed the instruction. We are inclined to hold, if the court erred at all in admitting the evidence in question, it was error without prejudice, and therefore all the assignments of error based upon this ruling of the court are without merit.

In connection with the horse injured in Utah, appellant complains that the damages awarded by the jury are excessive. It raises this question on its motion for a new trial, which was overruled. Appellant's contentions are that plaintiff alleged his entire damage in the complaint at $665; that this sum included the value of the horse injured in Utah, which afterwards died; that this horse, under the complaint, as amended, was entirely outside the case, and consideration thereof was taken from the jury by instruction of the court; that the testimony showed that the value of this horse was from $150 to $180, and the court should have instructed the jury to deduct the value of the horse from the total amount demanded in the complaint, but, instead of so doing, the court instructed the jury that if it found for the plaintiff it could allow the total amount, not exceeding $665, the amount demanded in the complaint. It is then contended by appellant that if the jury had deducted the lowest value, $150, it could not have found a verdict for more than $505, whereas the jury found $580, exclusive of interest, which made the verdict excessive to the extent of $75. It required an ingenious process of reasoning to reach this result, and we confess our inability to see the logic of the contention. As before stated, the original complaint declared for damages in the sum of $665, and was afterwards amended, not by changing the sum prayed for, but by limiting the territory within which damages were claimed, to wit, within the states of Nevada and California. Now, if the damages awarded by the jury were for injury done only in the states of Nevada and California, and were within the amount prayed for in the amended complaint, and within the evidence, we are unable to see what grounds appellant has to complain of excessive damages on this account. Plaintiff could have amended his complaint by increasing the amount of damages prayed for, if he had desired, and the only effect of the amendment he did make on the matter of damages was to eliminate all damages in the state of Utah and transfer the entire amount claimed to injuries occurring in Nevada and California. Besides this, we cannot understand what the injury done to the horse in

Utah, or the value of that horse, had to do with the case after the plaintiff amended his complaint, and especially after the court, by positive instruction, took that matter from the jury. As shown by the verdict, the jury followed the instructions of the court. Neither the court nor the jury erred in respect to this charge of excessive damages.

Appellant charges as error the refusal of the court to instruct the jury as requested in the latter part of its request No. 12, which in part reads as follows:

"And if you find from the evidence that the mare which was afterwards sold for the sum of $75 was injured in either the state of Nevada or the state of California as the result of the negligence of the defendant, you can only allow the plaintiff the sum of $25 for the damages to her."

The court refused that portion of the request on account of its limitation as to the amount of damages that might be recovered.

As before stated, the contract between the parties limited the claim respondent might make for damages on account of any one animal to a sum not exceeding $100, which had been fixed as the declared value. The mare referred to in that portion of the request we have quoted was injured while in transit, and afterwards sold by plaintiff for $75. Appellant's request was based upon the assumption that, as the declared value was only $100, and the plaintiff sold the mare for $75, the jury should not be permitted to award the plaintiff a sum exceeding $25. The court refused to instruct as requested, and the jury awarded plaintiff $80 damages on account of injury to the mare. The amount allowed being less than $100, the declared value fixed by the parties, the ruling of the court affords no grounds for complaint on the part of appellant. The sum of $100 per head was fixed as the greatest amount plaintiff could recover from the defendant, either for injury or total loss, and it had no relation whatever to what plaintiff might realize for the animal from other sources. This question has been determined by this court in a recent case adversely to appellant's contention. *Baird* v. *D. & R. G. R. Co.*, 49 Utah, 58, 162 Pac. 79. We

see no reason for departing from the rule announced in that case.

In the written contract under which the animals were shipped respondent agreed ''to load said live stock at point of shipment, unload and reload at resting places, and unload at destination and to feed and water at his expense, and to accompany and attend said live stock en route and to destination.'' It was known by the evidence that the horses were not fed promptly upon being unloaded at Los Angeles. The federal statute in such cases permits the confinement of the animals without food and water for a period of twenty-eight hours. By request of the shipper this period may be extended to thirty-six hours. The request was made in the present case. The horses arrived at Los Angeles at eleven P. M., having then been confined without food and water for a period of thirty-three hours, which, as we have shown, was permissible under the federal statute and the request of the shipper above referred to. The horses were then taken to the stockyard and unloaded at about one A. M. next morning. No food had been provided, nor could any be obtained by the shipper before seven o'clock a. m. The shipper could not procure a delivery of the horses to him until the freight was paid, and he could not pay the freight until the office opened in the morning. The testimony tends to show the horses were not fed until about seven or eight o'clock A. M. after a confinement without food for over thirty-nine hours. Appellant contends, under the provision of the shipping contract above quoted, that it was not responsible for any damages to the animals after they were unloaded at Los Angeles; that its duty as a carrier ceased at that point; that it owed no duty to furnish food at the stockyards in Los Angeles, and that the shipper had agreed to feed the horses himself. Evidence of what occurred in Los Angeles after the horses were unloaded was objected to by appellant and assigned as error; also an instruction of the court authorizing the recovery of damages for failure to provide food and the refusal of appellant's request to instruct that the defendant was not liable after the horses were unloaded are likewise assigned as error. The

jury found as damages for the plaintiff for each of the twenty head of horses the sum of $20, and under the complaint this damage is limited to injury done by being deprived of food and water for the period in excess of thirty-six hours.

The contention of appellant on this point is that it is not liable for damages on this account, inasmuch as the shipper had agreed to feed and water the animals, and, furthermore, that it is not liable for any damages after the horses were unloaded. In support of these propositions appellant cites *Mo. Pac.* v. *Texas* (C. C.) 41 Fed. 913; *Ga. Ry. & B. Co.* v. *Reid*, 91 Ga., 377, 17 S. E. 934; *Central R.* v. *Bryant*, 73 Ga. 722; *U. S.* v. *Philadelphia R. R. Co.* (D. C.) 223 Fed. 207-211; *Paul* v. *Pennsylvania Ry. Co.*, 70 N. J. Law, 442, 57 Atl. 139; *Ft. Worth & Denver City R. R. Co.* v. *Daggett*, 87 Tex. 322, 28 S. W. 525; *Hengstler* v. *Flint & P. M. R. R.*, 125 Mich. 530, 84 N. W. 1067. These cases are nearly all in point upon the proposition that a special contract whereby the shipper assumes the duty of feeding and watering live stock en route is a valid stipulation, not against public policy, and binding on the shipper. Some of them are federal cases in which the provisions are construed liberally in favor of the shipper, and most of them are cases in which the failure to provide food and water was due to the fault or negligence of the shipper himself. None of the cases are in point in a case like the one at bar where the carrier failed to provide facilities whereby the shipper could obtain food and water. In the *Ft. Worth & Denver City R. R. Case,* cited by appellant, the doctrine which we believe should be applied to this case is enunciated in a paragraph of the opinion, which we quote in full:

"We are further of the opinion that the special contract, as well as the act of Congress, relieved the carrier of the duty in the first instance, of feeding and watering at such points as it furnished reasonable facilities to the shipper to do so, but that in the absence of such facilities at any point the contract would be unreasonable as to such point, and the carrier would be liable for any damage resulting from the failure to feed and water at such point."

It does seem to us that, until the animals in question could be turned over and delivered to the consignee in the due course of business, the duties of the carrier, whatever they might be,

were continuing and did not cease as claimed by appellant when they were turned into the stockyard. To the same effect as the language which we have quoted from the Texas case are many of the cases cited by respondent. In *Groot* v. *Railroad Co.*, 34 Utah, 161, 96 Pac. 1019, this court announces the same doctrine, and, although it was an action for a tort, the principle is thoroughly discussed and considered. In *Railroad Co.* v. *Gann*, 8 Tex. Civ. App. 620, 28 S. W. 349, the court says:

"Where a duty is imposed by law on a railroad company to water and feed stock in transit, it is not relieved from liability by showing that the shipper had undertaken that duty, if it appears that by its acts it prevented the shipper from performing it."

*Railway Co.* v. *Crawford* (Tex. Civ. App.) 146 S. W. 329, is to the same effect. *Railway Co.* v. *Cunningham*, 51 Tex. Civ. App. 368, 113 S. W. 767, holds that a stipulation by the shipper whereby he assumes the duty of feeding and watering live stock in transit is void where the carrier does not provide reasonable facilities for that purpose. The Texas Court of Civil Appeals in *Chicago, R. I. & G. R. Co.* v. *Scott*, 156 S. W. 297, holds that a provision in the shipping contract whereby the shipper assumes the risk and expense of feeding, watering, and otherwise caring for live stock while in cars, yards, and pens, etc., is void. Respondent cites also *Burns* v. *Chicago, Milwaukee & St. Paul R. Co.*, 104 Wis. 646, 80 N. W. 927; *Reynolds* v. *Great Northern Ry. Co.*, 40 Wash. 163, 82 Pac. 161, 111 Am. St. Rep. 883, *Smith et al.* v. *Railway Co.*, 100 Mich. 148, 58 N. W. 651, 43 Am. St. Rep. 440, *Grieve* v. *Ill. Cent. Ry. Co.*, 104 Iowa, 659, 74 N. W. 192, *Railway Co.* v. *Bank*, 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449, *Ward* v. *Railway Co.*, 87 Kan. 824, 126 Pac. 1083, and many other cases, all of which are more or less in point on the question now under review.

As we view this question under the evidence, appellants, not having provided facilities for feeding the horses during the time they were in its charge, and before delivery to the consignee, became liable for any damage sustained by the shipper by reason of the animals being deprived of food for a period of time in excess of thirty-six hours, whether the horses were in its cars or in the stock-

yard awaiting delivery. Appellant's assignments of error on this account should not prevail.

The only remaining question to be determined is as to the damages awarded by the jury for the twenty head of horses which, the complaint alleges, were starved, emaciated, and shrunken in flesh by being deprived of food and water for more than thirty-nine hours at one time, while in transit and prior to their delivery at Los Angeles. As to these horses the complaint did not allege injury from bruises, wounds, lacerations, etc., as it did concerning the other three horses already considered by the court. But, inasmuch as the evidence introduced tended to show that the horses were bruised and scarred, as well as shrunken and emaciated, appellant contends that the jury which awarded plaintiff $20 per head as damages could not, under the circumstances, ascertain the damages, and in any event that the damages are excessive. The impracticability, if not the impossibility, of segregating the damages caused by lack of food and water from the damages caused by being bruised, wounded, and scarred is relied on by appellant in support of its contention. It is claimed by appellant that the jury disregarded the instruction of the court limiting it to damages on account of the horses being deprived of food, and, without attempting to segregate the damages, awarded the plaintiff damages for all the injuries the horses sustained, including bruises, wounds, scars, etc. For this reason appellant insists that the damages are excessive.

This assignment of error involves the question as to whether or not the evidence is sufficient to support the verdict as to that item of damages. Upon that question this court must give heed to a well-established rule by which it cannot disturb the verdict of a jury if it is sustained by substantial evidence. It cannot examine the evidence with the view of determining what, in its judgment, the verdict should have been. Its only function is to determine whether or not the verdict is sustained by any substantial evidence. It therefore becomes necessary to review the evidence for that purpose before considering the law relating to a question of

this kind. Mr. Sheffer, one of the owners of the horses, and a witness for plaintiff, on direct examination, after stating that the horses were gaunt, shrunken, bruised, and scarred, was asked the question:

"You may state how their condition compared with what it should have been if they had been fed five or six hours earlier."

He answered:

"Well, they wouldn't have been so gaunt and drawn if they had been fed earlier."

He then stated that that would have made a difference in their market value. He was then asked what difference, in his opinion, it would have made in the market value per head. He answered:

"Well, they will run anywheres from $15 to $25 per head."

On cross-examination the witness' answer, as we read the record, is a little confusing, but in answer to questions asked by appellant which included injuries from all sources, rough handling, deprivation of food, etc., the witness placed the damage at about the same figure as he did on direct examination, that is, $15 or $25 per head. Mr. Stewart, another witness for plaintiff, testified the market value of the horses in Los Angeles uninjured would have been $175. In the condition they were in when they came off the cars, in his opinion, their value would not be more than $140 per head. Mr. Richert, another witness for plaintiff, thought the normal value of the horses would have been from $175 to $200 per head, but they were shrunken, skinned up, etc., and in that condition he placed the value at $75 per head. Mr. Dowers said the horses looked awfully gaunt. They were badly shrunken and awfully skinned up. The average value of such horses should be $170 to $180 per head. In the condition they were in he placed the value at $140 per head. Dr. Hubbell, another witness, testified that the horses were badly shrunken; more than the usual shrinkage of horses. This was due to want of food, water, and rest.

The foregoing presents the principal and most substantial features of the evidence on the point in question. From this it

will be seen that the witness Sheffer in the first instance estimated the damage at $15 to $25, due to the lack of feed during the last few hours while the horses were in charge of appellant.    On cross-examination by appellant there was brought into the case injury from rough handling as a basis for a part of that damage.    Another witness put the entire damage from all causes at $100 per head, and two other witnesses placed the damages at $35 per head.    The witness Dr. Hubbell says they were badly shrunken, much more than usual, and this was for lack of food, water, and rest.

This much is manifest, the award of $20 per head by the jury was clearly within the evidence and away below the average of all the evidence by the witnesses as to the entire damage from all causes.    It is therefore not clear by any means, as claimed by appellant, that the jury allowed the plaintiff ''damages for the whole amount of injury sustained by the horses arising from all causes.''    If the jury had intended so to do, it could have allowed $100 per head, or $35 per head, if the pleadings had permitted it, and still have been supported by substantial evidence.    It does not follow because we cannot, in a case of this kind, determine just what the process of reasoning was by which the jury arrived at its verdict, that therefore the verdict should be set aside. If we were governed by that kind of rule, very few verdicts would be permitted to stand, except where the evidence could be reduced to a mathematical certainty.    That cannot be done in a case of this kind.    As stated in 8 R. C. L. p. 441:

''It is evident that the damages recoverable are nearly always involved in some uncertainty and contingency, and therefore it is a rule that reasonable certainty only is required.    Formerly the tendency was to restrict the recovery to such matters as were susceptible of having attached to them a pecuniary value, but it is now generally held that the uncertainty referred to is uncertainty as to the fact of damage, and not as to its amount, and that, where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This is particularly true where, from the nature of the case, the extent of the injury and the amount of the damage are not capable of exact and accurate proof.''

In the note, 53 L. R. A. at page 40, it is said:

"The rule that speculative damages cannot be recovered applies where it is uncertain whether damages were sustained at all from the breach or not, and not to such as are merely uncertain in amount."

In *Blagen* v. *Thompson*, 23 Or. 239, 31 Pac. 647, 18 L. R. A. at page 320, the court says:

"The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all."

In City of *Elgin* v. *Welch,* 16 Ill. App., a case cited by appellant, the court, at page 488, says:

"If from the nature of the case the jury could not ascertain with certainty the amount of the plaintiff's damages from the water set back by the concrete sidewalk, in contradistinction from that done by drainage in its natural course from other quarters or by percolation from the ditches of water other than that so set back, it was their province to estimate as best they could from the evidence how much of the whole amount was occasioned by it."

The point in question is not, How did the jury arrive at its conclusion? but, Is its conclusion and verdict within the evidence? As conceded by appellant, the court, by its instruction No. 3, limited the damage to the twenty head of horses solely to their being deprived of food during the last few hours, and did not submit to it in any form the right to award damages on any other account.

Unless it can be shown that the jury considered other causes of damage than that submitted to it by the court, it must be presumed that it followed the court's instruction, and that the damages awarded were exclusively for the injuries limited by the instruction.

We think the damages awarded for injury to the twenty head of horses were clearly within the evidence, and this court, in such a case, has no power to disturb the findings of the jury.

We find no error in the record. It is therefore ordered that the judgment of the trial court be affirmed; appellant to pay costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.