HARMON *v.* MICHIGAN UNITED TRACTION CO.

1. CARRIERS—NEGLIGENCE — DELIVERY — REASONABLE TIME — ORAL TESTIMONY—VARIANCE.

In an action against a railroad company for failure to transport an electric score board from Kalamazoo to Detroit with reasonable dispatch, where the bill of lading was silent as to the time of delivery, a conversation between the shipper and defendant's agent, in which the latter agreed to deliver the board the following morning was admissible as bearing on defendant's understanding of what was a reasonable time; and was not objectionable as varying the terms of the bill of lading.[1]

2. PLEADING—VARIANCE—CONTRACTS—PERFORMANCE.

It is not bad pleading to aver a time for performance where none is named in the contract.

KUHN and BROOKE, JJ., dissenting.

Error to Kalamazoo, Weimer, J. Submitted April 24, 1918. (Docket No. 108.) Decided July 18, 1918.

Case by Anna Harmon and another against the Michigan United Traction Company for failure to deliver certain freight. Judgment for defendant *non obstante veredicto.* Plaintiffs bring error. Reversed.

*Jackson & Fitzgerald,* for appellants.

*Sanford W. Ladd (Warren, Cady, Ladd & Hill,* of counsel), for appellee.

KUHN, J. *(dissenting).* This is an action instituted by the plaintiffs as copartners doing business as Harmon & Brennan, but upon the trial of the case, on motion of plaintiffs' attorneys, the allegation as to their being copartners was stricken from the declaration, so that the action proceeded with the plaintiffs as individuals against the defendant company.

---

[1]See notes in 14 L. R. A. 216; 10 L. R. A. (N. S.) 432; 34 L. R. A. (N. S.) 637.

George P. Harmon, acting as agent for the plaintiffs, went to the city of Kalamazoo on the 17th of September, 1915, and purchased an electric score board, to be used for the purpose of reproducing a game of ball which might be played at some distant city, play by play, showing every move made on the ball ground by having the same reproduced on this score board. It was a second-hand board, and after having purchased the same, Harmon took it to the defendant company's freight office in the city of Kalamazoo and arranged to have it shipped to the city of Detroit. It is his claim that he talked with the defendant's agent and was assured that the board, if shipped on that day, would be delivered in Detroit the next morning at 7 o'clock or thereabouts, and that he informed the agent at that time that he had leased a building in Detroit and wire service and also that he had heavily advertised the exhibition which he was to give, and that it was very important that the board should reach there on the morning of the 18th, and that if he could not be assured that the board would reach there at that time, he would ship it in some other manner. That upon receiving assurance that the shipment would arrive in Detroit at the promised time, he left the board with the defendant, consigned to Harmon & Brennan in Detroit, and received the usual bill of lading, which he signed, and which was also signed by the representative of the defendant. That a triplicate thereof was executed and delivered to him, representing the shippers, at the time of the shipment. It further appears that after the score board was received by the defendant, defendant's employees attempted to put it into the trailer car, which car usually went through to Detroit over the lines of the defendant company to Jackson and from there over the lines of the Detroit United Railway to its destination. It was found, however, that the score board was

too large in size to put into the trailer car and it was put into the motor car, which did not go through to Detroit, but stopped at Jackson. Upon the arrival of this car at Jackson, the board was taken from the car and there was turned over to the Detroit United Railway, but on account of its size it was found impossible to place it in any car that the Detroit United Railway had in Jackson. It remained in Jackson all night, and on the following morning, upon instructions being received from the Detroit office of the Detroit United Railway, the score board was shipped from Jackson to Detroit by the American Express Company, leaving Jackson at about 10 o'clock in the morning of the 18th and due to arrive in Detroit about noon of that day. Mr. George Harmon, who had taken a train into Detroit the evening before, called at the office of the Detroit United Railway on the morning of the 18th, but the board not being there, he was informed by the agent of the Detroit United Railway that the board was at Jackson and would be sent at once by the American Express Company. Through some misunderstanding, however, he did not receive the board in time for the exhibition and in consequence claims to have suffered damages, for which this action was brought. The case was submitted to the jury and resulted in a verdict for the plaintiff in the sum of $1,677. After the trial, counsel for defendant renewed a motion which they had made for direction of a verdict, the final decision of which the court had held in abeyance, and at the same time also argued a motion for a new trial, the motion for new trial being made conditional in case the court did not grant the motion to enter a verdict for the defendant. The court set aside the verdict and entered a judgment for the defendant. Whether the court erred in doing this is the principal question now before us for consideration.

The declaration upon which this action is brought alleges the following:

"And being so desirous they entered into a specific contract with the said Michigan United Traction Company, defendant herein, through its agents and representatives, to receive the said score board, supplies and appurtenances aforesaid properly crated and boxed, in the city of Kalamazoo, Michigan, on, to wit, the 17th day of September, 1915, and to deliver the same to the order of the plaintiffs herein in the city of Detroit not later than the morning of the said 18th day of September, for a consideration to be paid to said defendant.   *   *   *

"And relying upon the said promises and agreements of the said defendant to so transport the same to the said city of Detroit and have the same there on the morning of the said 18th day of September.   *   *   *

"Plaintiffs further allege that relying upon its contract with the said defendant,   *   *   *"

The trial judge, in the opinion filed in deciding the motion to direct a verdict, said:

"It appears that the bill of lading was signed by the witness, George Harmon, on behalf of the plaintiffs and the proper agents of the defendant company in its behalf.   *   *   *

"He was allowed to testify over the objection of the defendant to an alleged conversation with the agents of the defendant prior to, and coincident with the delivery of the board for shipment and the signing of the bill of lading by defendant's agent and himself as the agent of the plaintiffs, to the effect that the defendant's agent absolutely guaranteed delivery of the board at Detroit at seven o'clock a. m. September 18th.   *   *   *

"It is very apparent that the declaration was framed upon the theory of a specific, oral contract and that the bill of lading was then considered merely a receipt for the property.   It is equally apparent that that position was untenable under the proofs which showed conclusively that the bill of lading constituted the contract between the parties."

It is the contention of counsel for plaintiffs and appellants that the case was tried and submitted to the jury upon the theory that the score board was not delivered in Detroit by the defendant within a reasonable time under the provisions of the bill of lading. Section 3 of the provisions printed on the back of the bill of lading provided in part as follows:

"No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch, unless by specific agreement indorsed hereon."

The trial judge did submit to the jury the question of whether or not the carrier had transported the property in question with reasonable dispatch, in accordance with the terms of the bill of lading. It is contended that the conversation had between Harmon and the agent of the defendant company was admissible as bearing upon the question of what constituted reasonable dispatch under all the circumstances surrounding the transaction. In denying the motion for a new trial, the trial judge was of the opinion that the admission of this testimony was error and prejudicial, and with this we agree. It is clearly apparent from a reading of the declaration that the theory upon which this case was started is, as was indicated by the trial judge in his opinion passing on the question of directing a verdict, that a specific oral contract was entered into between the parties upon the 17th of September, providing that the goods should be delivered at destination on the 18th following, and it was not until the case came to trial that a different theory was insisted upon. The rule is well settled that parol evidence is not admissible to vary the terms of a bill of lading, and the conversation testified to by Harmon, if admitted, would be clearly an effort to establish a special agreement as to delivery of the property in addition to the agreement contained in the bill of lad-

ing. The rule is stated in 4 Ruling Case Law, p. 22, as follows:

"Where no time of performance is expressed in a bill of lading, the instrument is not on that account to be regarded as incomplete, so as to admit proof of a distinct and separate agreement as to time. In such case the parties are presumed to have intended that the carriers' obligation as to the time of performance shall not extend beyond that imposed on it in law in all undertakings for the transportation and delivery of goods, which requires no more than that the same be done without unreasonable delay. This implied agreement is as much a part of a bill of lading silent as to the time of performance, as if expressed in it in so many words; and the rule which forbids the introduction of parol proof to vary the terms of a written instrument excludes evidence of a prior or contemporaneous parol agreement that the goods shall be delivered within a definite and specific time."

See *Central Railroad Co.* v. *Hasselkus,* 91 Ga. 382; *McElveen* v. *Railway Co.,* 109 Ga. 249. This rule has been approved in this State in *Sloman* v. *National Express Co.,* 134 Mich. 16, which case is cited with approval in *Sturges* v. *Railway Co.,* 166 Mich. 231. In a case properly brought the question of whether or not under the terms of the bill of lading the property had been transported with reasonable dispatch would unquestionably be a question of fact for the jury under all the circumstances of the case. See 10 Corpus Juris, p. 286. In the instant case, however, we agree with the trial judge, because under the declaration as filed and the proofs as submitted, plaintiffs sought to enforce a special contract of carriage outside of the bill of lading, which, under the authorities, we are of the opinion cannot be done. Having accepted the bill of lading, the plaintiffs are bound by the terms thereof and cannot seek to vary its terms as to carriage unless the special agreement is indorsed thereon in accordance with the specific terms of the contract.

Upon the case before us we think that the judge was clearly right in directing a judgment to be entered in favor of the defendant *non obstante veredicto*.

The judgment should therefore be affirmed.

BROOKE, J., concurred with KUHN, J.

STONE, J. The conversation complained of was competent as bearing on defendant's understanding of what was a reasonable time; and was not objectionable as varying the terms of the bill of lading. There was no variance between pleadings and proofs, it not being bad pleading to aver a time for performance where none is named in contract. The judgment should be reversed, and a new trial granted, with costs to appellants.

OSTRANDER, C. J., and MOORE, STEERE, and FELLOWS, JJ., concurred with STONE, J. BIRD, J., did not sit.