INDUSTRIAL COMMISSION OF UTAH et al v. WASATCH GRADING CO.

No. 5020.   Decided October 15, 1932.   (14 P. [2d] 988.)

*Badger, Rich & Rich,* of Salt Lake City, and *D.. R. Gustaveson,* of Los Angeles, Cal., for appellant.

*Robinson & Robinson,* of Provo, for respondents.

ELIAS HANSEN, J.

Elmer Baum secured a judgment against the defendant in the sum of $2,000. The judgment was for personal injuries sustained by Mr. Baum alleged to have been caused by the defendant negligently running into him with a truck loaded with gravel. The defendant appeals.

At the threshold of this cause on appeal we are confronted with defendant's claim that the right to begin and maintain this action was and is in the industrial commission of Utah for the use and benefit of the state insurance fund, and that the judgment should be vacated because Elmer Baum was without authority to commence or maintain the action. The evidence bearing upon the question of who had the right to

commence and maintain this action shows these facts: On June 17, 1927, Elmer Baum was injured by a truck loaded with gravel driven by an employee of the defendant Wasatch Grading Company. At the time of his injury Mr. Baum was in the employ of the Knight Coal & Ice Company. He was engaged in delivering ice for that company in Provo City, Utah. The Knight Coal & Ice Company was a corporation subject to our State Industrial Act. It carried insurance with the state insurance fund. The accident was promptly reported to the industrial commission, which sent a blank form of claim for compensation to Mr. Baum with instructions for him to execute the claim and return it to the industrial commission. Mr. Baum filed his claim for compensation with the industrial commission on June 28, 1927. On July 27th the first payment of compensation was made to Mr. Baum out of the state insurance fund on account of the injuries which he sustained. Payments of compensation were continued regularly until the time of the trial. The hospital and medical expenses of Mr. Baum were also paid out of the state insurance fund. At the time of the trial the total sum paid on account of medical attention and compensation amounted to $2,747.81. As soon as Mr. Baum sufficiently recovered from his injuries so that he could transact business, Mr. Iverson, the claim adjuster for the state insurance fund, called on and explained to him his rights in the premises. Mr. Iverson informed Mr. Baum that if he desired to continue to receive compensation it was necessary that he assign his cause of action against the Wasatch Grading Company to the state insurance fund. On August 24, 1927, a blank form of assignment was sent to Mr. Baum and he was requested to execute and return the same. He delayed making the assignment but continued to receive compensation from the fund. On October 31, 1927, Mr. Baum brought an action against the defendant in the district court of Utah county, Utah. No mention was made in the complaint of the fact that Mr. Baum had received and was receiving compensation from the state insurance

fund. On December 9, 1927, the following communication was sent to Mr. Baum:

"On several occasions we have made requests of you to execute and return assignments against the man responsible for your injury of June 17, 1927, but up to this time you have failed to send them.

"The fact that you made application for compensation to us and that we have already paid $871.12 is sufficient evidence of an election under the Compensation Act, and we will thank you to date, sign, and return the papers sent you for the purpose, at your earliest possible convenience.

"We feel that we have given your case more than the ordinary attention, having furnished you with over $600 for hospital and nursing service, and under these circumstances we feel that you should help protect our interests, and not arbitrarily delay our attempt to get reimbursement from the man who was responsible for your injury.

"If, however, you feel that it is more advantageous to sue for damages, it will be necessary to return to us in a lump sum $871.12 at once, otherwise we will hand this matter to the Attorney General for his immediate attention.

"There is still outstanding an account against you in the shape of a doctor's bill, which we will refuse to pay if presented before you comply with our requests.

"Trusting you will give this matter your earliest possible attention, we beg to remain,

"Very truly yours,
The State Insurance Fund."

It should be noted that the evidence fails to show that prior to the time the foregoing letter was written Mr. Baum had assigned or agreed to assign his cause of action, unless it may be said that the filing of the claim for and accepting compensation constituted an assignment.

Under date of December 19, 1927, Mr. Baum executed an assignment of his claim for damages against the Wasatch Grading Company to the state insurance fund. By the terms of his assignment the members of the state industrial commission of Utah were appointed the attorneys for Mr. Baum "with full powers of substitution and revocation for me and in my name but for the sole use of the State Insurance Fund to ask, demand, sue for, receive, compound and give acquittances for said claim or claims or any part

thereof." On June 13, 1928, an amended complaint was filed in the cause. In the amended complaint the industrial commission of Utah, the state insurance fund, and Elmer Baum were made parties plaintiff. It was alleged in the amended complaint that since the original complaint was filed Elmer Baum has elected to accept the benefits of the Industrial Act (Comp. Laws 1917, § 3061 et seq., as amended), that the industrial commission of Utah has paid to Elmer Baum out of the state insurance fund the sum of $1,700, and that Elmer Baum has assigned his cause of action against the defendant to the state industrial commission and state insurance fund. Defendant attacked the amended complaint by a motion to strike the industrial commission of Utah and the state insurance fund as parties plaintiff, because the same were made parties plaintiff "without the knowledge or consent of the defendant and without leave of court first had and obtained." Defendant also filed a special and general demurrer to the amended complaint. One of the grounds of the demurrer was that there was a misjoinder of parties plaintiff, in that by the assignment of his cause of action Elmer Baum "no longer has any interest in said action." The motion to strike was denied and the demurrer was overruled. In its answer defendant alleged that Baum had assigned his cause of action before he commenced the same and that he had no right, title, or interest in the action. After the jury was impaneled to try the cause, counsel for the defendant moved that plaintiff be required to elect "as to whether the cause be continued in the name of Elmer Baum or in the name of the Industrial Commission of Utah." That motion was granted. Counsel for plaintiffs elected to prosecute the action in the name of Elmer Baum. Upon defendant's motion the action was dismissed as to the industrial commission and the state insurance fund. At the conclusion of the evidence the court instructed the jury that any verdict that they might render in favor of Mr. Baum would be for the use and benefit of the state insurance fund. Defendant

requested the court to instruct the jury to return a verdict in its favor because Elmer Baum had no interest in the action. The request was refused. Error is assigned by the defendant because the court overruled its demurrer and also because of the failure of the court to direct a verdict.

Defendant contends that by filing his claim with the industrial commission and accepting compensation, Mr. Baum became divested of all right, title, and interest in and to any cause of action which he might have had against the Wasatch Grading Company; that Mr. Baum being without right, title, or interest in the alleged cause of action at the time the action was commenced, neither he nor his assignee can maintain the original action; that in the absence of a right in Mr. Baum to commence the action, the bringing thereof by him was and is a nullity.

Where Workmen's Compensation Laws are in effect, there is a diversity of opinion with respect to who is or are proper party or parties plaintiff or plaintiffs in an action to recover damages for injuries sustained by an employee who, in the course of his employment, is injured by a tort-feasor other than the employer. We shall not undertake to review the numerous decisions bearing upon that question. A discussion of the rules which prevail in the various states together with citations of the adjudicated cases will be found in volume 1 (2d Ed.) at pages 332 to 385, of Schneider on Workmen's Compensation Law. Much of the apparent conflict in the cases disappears when viewed in the light of the provisions of the various Workmen's Compensation Acts under which the decisions were rendered. The general rule deducible from the adjudicated cases is that when the law contains a provision as to who may bring the action such provision should be complied with, and that in the absence of such provision the action should be brought in the name or names of the real party or parties in interest. There was no express provision in our Workmen's Compensation Law as it stood at the time in question which directed in whose name actions such as the one under review should

be commenced. The right, if any, of Mr. Baum to commence the action must be tested by general principles applicable to parties to an action. Laws of Utah 1921, c. 67, amending Comp. Laws, § 3133, was in effect at the time in question. It is there provided:

"If an employee under this Act be injured or killed while in the course of his employment by another not in the same employment, he or his dependents in case of death, shall be entitled to compensation and to no other remedy unless the employer be subject to the provisions of Section 3129 and 3130. No employee or the dependents in case of death shall be granted compensation in such case unless such employee or his dependents, as the case may be, shall assign any cause of action existing against the person responsible for or causing the injury or death to the state insurance fund, if compensation be payable therefrom, and otherwise to the person or association or corporation liable for the payment of such compensation. And such cause of action is by this section made assignable, whether it be for injury or death, and the dependents or the personal representative and not the heirs in such case shall have the right and power to make a full and exclusive assignment notwithstanding Sections 6504 and 6505, Compiled Laws of Utah, 1917."

In construing the foregoing provisions this court held in the case of *Robinson* v. *Union Pacific R. Co.*, 70 Utah, 441, 261 P. 9, that an employee who, in the course of his employment, is injured by the negligence of one not the employer, may either bring an action against the wrongdoer for the injuries sustained or (by assigning his cause of action as in the act provided) may claim the benefits of the Workmen's Compensation Act. In the case of *Robinson* v. *Industrial Commission*, 72 Utah, 203, 269 P. 513, it was held that an injured employee is not entitled to compensation from his employer in the absence of an assignment of his cause of action against the wrongdoer to the person, association, or corporation liable for the payment of compensation. Mr. Baum had no right to compensation from his employer at the time he commenced his action against the Wasatch Grading Company. He had not then complied with the requirement imposed upon him by

law as a condition precedent to his right to such compensation. He became vested with such right for the first time when, on December 19, 1927, he executed and delivered the assignment to the state insurance fund. Neither the claim adjuster of the state insurance fund nor the industrial commission of Utah were required to pay or direct the payment of money from the state insurance fund to Mr. Baum prior to December 19, 1927, when he executed and delivered the assignment. When Mr. Baum received his injury, the cause of action growing out of such injury was in him. It remained in him until he divested himself of such right in the manner prescribed by law, viz., by an assignment thereof to "the person, association or corporation liable for the payment of * * * compensation." It cannot be said that Mr. Baum lost his right to commence an action against the Wasatch Grading Company until he acquired a right to compensation. He was not divested of the former nor possessed of the latter until he, on December 19, 1927, assigned his cause of action. It follows, therefore, that at the time this action was begun on October 31, 1927, Elmer Baum was a real party in interest and as such was entitled to bring this action. One having the legal title to a cause of action is a real party in interest within the meaning of Comp. Laws Utah 1917, § 6495. *Baglin* v. *Earl-Eagle Mining Co.*, 54 Utah, 572, 184 P. 190. We have a statute, Comp. Laws Utah 1917, § 6513, which provides:

"An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action or proceeding survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In the case of any other transfer of intererst, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

It appears from the record before us that Mr. Baum, the state insurance fund, and the industrial commission were

represented by the same counsel. Upon the action being dismissed as to the industrial commission of Utah and the state insurance fund, they had a right under the provisions of section 6513, above quoted, to continue the action in the name of Elmer Baum. The assignment also confers upon the assignees the right to maintain an action in the name of the assignor. It thus follows that a right to bring this action at the time it was begun was in Mr. Baum, and the industrial commission of Utah and the state insurance fund, to whom the cause of action was assigned, were entitled to continue the cause of action in his name. Defendant's claim that the action should have been dismissed because Elmer Baum had no right to bring or maintain the same cannot be successfully maintained.

Defendant also complains because his special demurrer to the complaint was overruled. Plaintiffs' allegations as to defendant's negligence read as follows:

"That at said time and place the defendant, through its agents, servants and employees, was operating a large automobile truck with gasoline motive power, and of great propelling force, which said truck at the time and place aforesaid was heavily loaded with gravel and was being operated in and along said public street in Provo City, Utah County as aforesaid, and was traveling in a southerly direction, and that at said time and place the said Elmer Baum was traveling with a team and wagon in the performance of his duty in the same direction as the defendant. That in the circumstances it then and there became and was the duty of said defendant to so operate said truck as not to injure the life or limb of any person or the safety of any property lawfully upon said highway, and to operate said truck at a reasonable, proper, and lawful rate of speed, having due regard for the character, traffic, and common use of said highway, and to have said automobile under immediate control so that the same could be slowed down and immediately stopped, if necessary, and to keep a proper lookout for persons and vehicles, and to keep said truck under such control as would enable said defendant to avoid a collision with persons and vehicles lawfully in and upon said highway, and to at all times operate and drive said truck in a careful and prudent manner, and to have said truck equipped with sufficient and serviceable brakes.

"That notwithstanding the premises, and with wilful disregard and in violation of his duty in the circumstances, said defendant through its agents, servants, and employees, at said time and place negligently, carelessly, and recklessly ran and drove said truck at a speed greater than was reasonable and safe, and without regard for the character, traffic, and common use of said street or highway, and so as to endanger the life, limb and safety of persons in and upon said highway and in said street, and at a dangerous and unlawful rate of speed under the circumstances then existing, and drove said truck with a careless disregard for the safety of other persons using said highway, including the said Elmer Baum, and without bringing or having said truck under control so that the same could be slowed down or immediately stopped to avoid a collision with persons or vehicles, and said defendant, through its agents, servants, and employees, wholly neglected in its duty in this behalf, and failed and omitted to keep a proper or any lookout for persons and vehicles lawfully using or upon said highway and street, including the said Elmer Baum, and without giving or sounding due or timely or any warning or signal of the approach of said truck, and said defendant carelessly, negligently, and recklessly neglected its duty in this behalf in each and all of the particulars herein enumerated, thereby causing the accident and injuries to the said Elmer Baum, which said injuries are hereinafter more particularly described."

Defendant in its special demurrer attacked the amended complaint because it was ambiguous, unintelligible, and uncertain in that:

"It cannot be ascertained therefrom at what rate of speed the truck of defendant was being driven, nor can it be ascertained what the facts and circumstances were which made it dangerous to drive the said truck at the rate of speed at which it was being driven; that it cannot be ascertained therefrom how, in what manner, or by reason of what facts the said truck was not under the control of defendant or its agent; that it cannot be ascertained from said complaint how or in what manner the defendant failed and neglected to have the said truck equipped with proper brakes; that it cannot be ascertained therefrom whether plaintiff will contend that there were no brakes whatsoever upon said truck or whether it will be contended that the brakes which were upon the said truck were in some manner improper brakes, and if so that it cannot be ascertained from said complaint how or in what manner the said brakes were improper. That it cannot be ascertained from said complaint how or in what manner plaintiff contends that defendant failed and neglected to keep

a proper lookout; that by reason of the ambiguity of said complaint it cannot be ascertained whether it will be contended that the lookout which was kept was in some manner improper or insufficient."

It is alleged in the complaint that at the time in question the defendant owed a duty to Elmer Baum in a number of particulars, among them to have its truck equipped with sufficient and serviceable brakes. It is also alleged that the defendant failed to perform its duty in the premises. The complaint is silent as to any act of commission or omission that defendant did or failed to do with respect to the brakes. Nor is it alleged that the injury complained of was caused by anything that defendant did or failed to do with respect to the brakes. "In order to constitute actionable negligence there must exist three essential elements—namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. Not only must the complaint disclose these essentials, but the evidence must support them, and the absence of proof of any of them is fatal to recovery." 20 R. C. L. § 7, pp. 10, 11. Sufficient facts are not alleged in the complaint to state a cause of action upon the ground that defendant failed to have its truck equipped with proper brakes. Apparently the learned trial judge took such view because no instruction was given to the jury on the question of defective brakes.

The language of the amended complaint heretofore quoted cannot be said to be ambiguous or unintelligible. As a general rule a complaint bottomed on negligence is not vulnerable to a special demurrer upon the ground of uncertainty where such complaint contains a general allegation of negligence accompanied by an averment of facts with such certainty as will reasonably inform the defendant what is proposed to be proved so that he may have a fair opportunity to meet the alleged facts and prepare his defense. According to the weight of authority, less particularity in a pleading is required where the facts are pecu-

liarly within the knowledge of the defendant. 20 R. C. L. § 145, p. 174; 45 C. J. § 650, p. 1080 et seq., and cases there cited. No other or different rule is announced in the cases cited by the defendant. The defendant is charged with operating the truck at an excessive rate of speed, with failing to keep a proper lookout ahead, with a failure to warn plaintiff of the approach of the truck, and with a failure to keep the truck under proper control. Sufficient facts were averred in the amended complaint to show in what particulars the plaintiff was negligent at the time in question. Both the general and special demurrers were properly overruled.

At the conclusion of plaintiff's evidence defendant moved for a nonsuit upon the ground that the evidence failed to show that the defendant was negligent in any of the matters charged in the complaint. The motion was denied. The ruling is assigned as error. Plaintiff's evidence tends to establish these facts: On June 17, 1927, at about 8:15 a. m., Elmer Baum was driving a team of horses hitched to an ice wagon loaded with ice. He was driving in a southerly direction on University avenue, Provo City, Utah, along the west or right-hand side of the street. Suddenly and without warning the defendant's truck which was loaded with gravel crashed into the rear of the ice wagon. As a result of the impact Mr. Baum was thrown from the seat of the wagon to the ground and was severely injured. At the time of his injury he was delivering ice for his employer, the Knight Coal & Ice Company. Mr. Baum testified that he did not hear the truck until it crashed into the ice wagon; that if he had heard the truck as it approached he could have avoided being thrown from the ice wagon. Heber S. Rupper, general manager of the Knight Coal & Ice Company, testified that he was at the scene of the accident soon after it occurred; that there were marks on the pavements, and gravel was scattered on the street from where the collision occurred to where the truck stopped after the collision; that he made measurements of the marks he

found on the pavement at the place where the truck ran into the ice wagon which showed that after the impact the truck ran 71 feet 6 inches and the wagon about 30 feet; that the rear spring and the rear end gate of the ice wagon and the front of the truck were broken by the collision; that there were marks on the pavement which indicated that the brakes on the truck had been applied a few feet before it struck the ice wagon. The testimony of Mr. Rupper to the effect that the truck moved 71 feet 6 inches after the collision, and that the brakes were applied some feet before the collision occurred, is some evidence tending to show that the truck was being driven at an excessive rate of speed before the accident. The fact that in broad daylight the truck was driven into the rear end of the ice wagon is some evidence tending to show the driver of the truck was not keeping a lookout ahead, and also that he did not have proper control of it. At the close of plaintiff's case in chief the evidence was very meager touching the charged negligence of the defendant in failing to give warning of the approach of the truck. The only testimony offered to support that allegation was the statement of Mr. Baum to the effect that he did not hear the truck as it approached until it struck the rear end of the ice wagon. The record is silent as to whether he was or was not paying any attention to the approach of automobiles from the rear or whether he could or could not have heard a signal if one had been given. The law applicable in such case is discussed in *Clark* v. *Union Pacific R. Co.*, 70 Utah, 29, 257 P. 1050. Under the rule announced in the Clark Case, supra, it is doubtful if there was sufficient evidence before the jury to support a finding that no warning was given of the approach of the truck. However, there was some evidence offered by the defendant which tends to support the claim that no warning was given. The driver of the truck was called as a witness and asked to relate what he did just before the accident. He stated he was driving the truck south on University avenue; that as he approached the place where the accident occurred there were ruts in the street just where the dirt road and the cement pavement

joined; that there was a drop of about a foot as he drove
from the dirt road onto the pavement; that he was travel-
ing about twenty miles per hour; that soon after he entered
upon the cement pavement he discovered that he could not
turn the steering wheel of the truck; that the front spring
of the truck had broken, letting the body of the truck down
so that the front wheels could not be turned; that when he
discovered the steering wheel was "frozen" he applied the
brakes, but did not have sufficient time to bring the truck
to a stop before it crashed into the ice wagon. He apparent-
ly related in detail all that he did just before the collision
but made no mention of giving any warning to the plaintiff
of his approach. If he had given a warning, it is reasonable
to assume that he would have so stated when asked to re-
late what he did just before the accident. The testimony of
Mr. Baum as aided by the inference that the jury were en-
titled to draw from the testimony of the driver of the truck
was sufficient to take the case to the jury on the alleged
negligence of the defendant in failing to sound a warning
of the approach of the truck. Assuming therefore that the
evidence before the jury at the time the motion for a non-
suit was made was insufficient to take the case to the jury
on the alleged negligence of the driver of the truck in fail-
ing to give warning of his approach, yet the defendant,
having supplied sufficient evidence to take the case to the
jury, may not be heard to complain because the motion for
a nonsuit on that ground was denied. An error in denying
a motion for a nonsuit because of insufficiency of the evi-
dence is cured where evidence subsequently introduced by
the defendant supplies the deficiency. *Boyd* v. *San Pedro,
L. A. & S. L. R. Co.*, 45 Utah, 449, 146 P. 282; *Dee* v. *San
Pedro, L. A. & S. L. R. Co.*, 50 Utah, 167, 167 P. 246. Nor
can it be said as a matter of law that the failure of the driver
of the truck to give warning of his approach did not con-
tribute to the accident. Mr. Baum testified that if he had
known that the truck was about to run into the ice wagon
he could have avoided being injured. The jury may well

have believed that, if the driver of the truck had given proper warning after he discovered the truck was beyond his control, Mr. Baum would have heeded such warning and thus have avoided being injured.

Defendant complains because the court below admitted over its objection and exception the testimony of one J. S. Shipp. He was permitted to testify that about three hours after the accident he examined the truck which was in the accident; that the brakes on the truck were worn out so that when they were applied they offered very little resistance. Apparently that testimony was offered and received on the theory that the complaint charged the defendant with operating the truck on the occasion in question without proper brakes. Defendant resisted the introduction of the testimony upon the ground, among others, that there was no foundation in the pleadings for its introduction. As heretofore stated in this opinion, the complaint fails to allege sufficient facts to charge negligence with respect to defective brakes. The objection to the introduction of that testimony should have been sustained.

As one of the grounds of defense defendant alleged that Elmer Baum was guilty of negligence which caused or contributed to his injury. Defendant requested the court to charge the jury on the law of contributory negligence. The request was refused. Such refusal is assigned as error. Elton Meacham, the driver of the truck, testified that he saw Mr. Baum before he struck the ice wagon on the grass between W. H. Boyle's residence and the Wakefield residence, almost to the sidewalk; that he was walking toward the ice wagon which was standing about 12 feet from the curb; that Mr. Baum was about 24 feet from the ice wagon at the time the truck was about 30 feet from the ice wagon. It is suggested in defendant's brief that Mr. Baum was injured in attempting to prevent the team of horses, which were hitched to the ice wagon, from running away. The only support that the suggestion finds in the evidence is that one of the witnesses testified that Mr. Baum

was holding the lines soon after the accident. It also appears that Mr. Baum was injured near the curb. The facts that Mr. Baum may have been some distance from the ice wagon just before the accident and that he was injured near the curb and that he held the lines soon after the accident do not tend to show that he was guilty of contributory negligence. There is no evidence that Mr. Baum had any reason to believe that the truck was out of the control of the driver or that it was about to run into the ice wagon. Upon this record the court properly refused to submit the question of contributory negligence of Mr. Baum to the jury.

Defendant requested the trial court to instruct the jury that if they found for the plaintiff their verdict could not be for a greater amount than the sum "paid Mr. Baum up to the present time." The trial court refused the requested instruction, but did instruct the jury that their verdict could not be for a greater amount than such sum as the industrial commission had paid, or which it was liable to pay under the provisions of the Utah Industrial Insurance Act; that under that act the maximum amount that the insurance commission could be obligated to pay out of the state insurance fund was the sum of $3,959.58; and that therefore the jury could not render a verdict exceeding that sum. Appellant complains because the trial court refused the requested instruction and because of the instruction given. It has no just cause to complain of the instruction given. The claim that plaintiff was not entitled, in any event, to recover a judgment for a greater amount than the sum paid as compensation is without merit. The state insurance fund was entitled to be reimbursed, not only for what had been paid to Mr. Baum at the time of the trial, but also for any additional sum that it was legally obligated to pay. Indeed, there is both authority and reason for saying that the fact that compensation had been paid to Mr. Baum was no concern of the defendant—that the extent of defendant's liability was not affected by the assignment of the cause of action, or by the amount the assignee had

paid or might be required to pay as compensation. The plaintiff, however, has not assigned cross-error and does not here complain of the instruction given. Plaintiff is apparently content with the instruction and the instruction is at least as favorable to the defendant as it was entitled to have given. Under such circumstances the question of whether the trial court unduly limited the jury as to the maximum amount of the verdict that they might find is not before us for review. We therefore express no opinion concerning that question. It may be noted in this connection that plaintiff prayed for $20,000 damages, that the verdict of the jury was for a less amount than was paid to Mr. Baum in compensation, medical and hospital expenses at the time of the trial; and that the evidence tends to show that as the result of his injury Mr. Baum was unable to work for a period of more than a year, and that he probably sustained permanent injuries. It cannot be said that the verdict was excessive.

One of the instructions which the trial court gave to the jury reads as follows:

"You are instructed, gentlemen of the jury, that testimony has been offered and received in this case on behalf of the defendant to the effect that the steering device on the truck of the defendant, immediately prior to and at the time of the accident, failed properly to operate, so that the driver of the truck could not properly steer said truck. If you find this to be a fact, and you also find that the cause of the steering gear, or steering device, failing to properly function was due to the defendant's failure to keep said steering device in proper repair, considering the use to which said automobile was being put by the defendant, and if you shall find that the lack of repair in the steering device was the proximate cause of the accident and injury complained of, then the Court instructs you that your verdict should be for the plaintiff.

"But you are also instructed, gentlemen of the jury, that if you shall find by a preponderance of the evidence that the steering device on said automobile failed to function as a result of an accident or some cause over which defendant had no control and could not reasonably anticipate, and was not in fact due to the absence of proper repair in connection with said steering device, and that said accident resulting in the failure of the said steering device to prop-

erly function was not caused by the negligence or carelessness of the defendant, then you cannot find that the injury was caused by the negligence or carelessness of the defendant."

Defendant objected to the foregoing instruction and assigns the giving thereof as error. Nowhere in the complaint is it charged that the defendant was negligent in failing to keep the steering device of the truck in question in proper repair. There is no general language in the complaint which can be said to charge such negligence. Nor is there any evidence that the steering device of the truck was not in proper repair prior to the time that it is claimed the front spring of the truck broke, letting the body of the truck down, thereby "freezing" the steering device so that it could not be operated. The mere fact that the front spring broke under the circumstances testified to by the driver of the truck is not evidence that the defendant was negligent in failing to keep the spring in repair, much less is it evidence tending to show the defendant was negligent in failing to keep the steering device in repair. It is a well-established rule of law in this, as well as other jurisdictions, that the acts of negligence relied upon by the plaintiff for a recovery must be both alleged and proved. It is reversible error to instruct the jury that they may find a verdict for a plaintiff because of some negligence which is not pleaded or which is without support in the evidence. *Smith* v. *San Pedro, L. A. & S. L. R. Co.*, 35 Utah, 390, 100 P. 673; *Macky* v. *Bingham New Haven Copper & Gold M. Co.*, 54 Utah, 171, 180 P. 416; *Martindale* v. *Oregon Short L. R. Co.*, 48 Utah, 464, 160 P. 275; *Kendall* v. *Fordham* (Utah) 9 P (2d) 183.

The judgment is reversed. This cause is remanded to the district court of Utah county with directions to grant a new trial. Appellant is awarded its costs.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.