ZIMMERMAN v. AUERBACH

No. 5226.   Decided December 30, 1932.   (17 P. [2d] 251.)
Rehearing Denied July 22, 1933.

*E. A. Rogers* and *Allen T. Sanford,* both of Salt Lake City, for appellant.

*Harley W. Gustin* and *J. W. Ensign,* both of Salt Lake City, for respondent.

FOLLAND, J.

This is an action by plaintiff for personal injuries to her hair and head alleged to have been caused by the negligence of defendant's employee in giving her hair a permanent wave. From a judgment for plaintiff, defendant appeals and assigns error in the refusal of the trial court to admit certain offered evidence and in instructing the jury. The negligence charged in the complaint is that "plaintiff employed defendant, * * * to treat her hair and scalp in such a manner and by the use and application of such electrical contrivances and appliances as to result in giving to her hair a permanent wave; that defendant entered upon the performance of such employment, but carelessly, negligently and unskillfully applied said electrical appliances to the hair and scalp of plaintiff, said appliances being then and there under the operation and control of defendant, his agents and employees, in such manner as to severely burn plaintiff's scalp and hair, and to cause an overbaking thereof to the extent of causing plaintiff's head to become blistered and her hair to fall off and come out. * * *" Defendant by answer admitted the employment, but denied the negligence charged.

Plaintiff testified in substance that before being given the permanent wave her hair was examined by the operator, who asked her whether she had ever used anything on her hair, to which she answered, "Yes, I have used some peroxide on the back." The operator stated she would not take the responsibility of determining what sort of a permanent wave best suited her hair, and called Mr. Auerbach, who, after examination, said her hair would "take any wave we have got." The operator then proceeded to give her hair a

Duart wave, and handed plaintiff a watch, with instruction to advise the operator at the end of five minutes after the electric current was applied. After one and one-half or two minutes plaintiff complained of pain and that her head was being burned and the operator said "You will have to stand a little heat." Plaintiff again complained of burning but that the operator did not turn off the electric current until the expiration of the five minutes. After the electrical appliances were removed, the hair was discolored, streaked, sticky, and brittle, and came off by touching. In order to present a respectable appearance, the plaintiff was compelled to have her hair cut and to wear a wig until it grew out again; that as a result of the treatment plaintiff's scalp was blistered and she became sick and suffered physical pain, mental distress, and anguish. There is a sharp conflict in some phases of the evidence. Defendant's operator testified that she asked plaintiff if she had anything on her hair, and that plaintiff said, "No"; that she (the operator) could not tell from inspection whether dyes or peroxide had been used, and, while she had some doubt about it, when plaintiff told her she had not used anything on her hair, she went ahead with the treatment as for natural hair. After a shampoo, the hair was blocked, a liquid chemical solution applied, the Duart machine placed on the head and heat applied; that the plaintiff made no complaint about the heat or the burning of her hair, and that after an application of the electrical energy for five minutes the current was turned off; that, when the curlers were taken off, the hair was sticky and streaky, having been overbaked or oversteamed; that she then called Mr. Auerbach, who asked Mrs. Zimmerman what she had used on her hair, and plaintiff answered: "I have had something on my hair but it was quite a while ago but I did not think it was necessary to mention it." Plaintiff's hair was then cut, and she left the beauty salon wearing a wig supplied by defendant. The operator said she had examined plaintiff's scalp; that it was dry and sticky, but not burned. The defendant testified that he did

not see or examine plaintiff's hair before the treatment, but was called to look at it after treatment; that her hair was overbaked, causing it to fall off close to the scalp, and that this was the result of using the wrong solution; that the machine was well taken care of and examined every day, and used on other patrons the same day and succeeding days with the same solution without injuries to them. The evidence indicated that the Duart wave which defendant's operator attempted to apply to plaintiff's hair is given by use of a Duart permanent waving machine. The machine is composed of a dome heater, a number of element curlers, bamboo strips, and pads; that a strand of hair is wrapped tightly around the element curler, over which is wrapped a pad which has been dipped in the secret chemical solution prepared by the Duart Company for use in connection with its machine. The dome is then placed over the head and heat applied by means of electric current. One secret chemical solution is prepared for use on hair which had previously been treated with dyes, bleaching agencies, or restoratives. The Duart Company supplies both solutions. For natural hair the heat is applied from three to five minutes, and on dyed or bleached hair only from two and one-half to three minutes. The operator testified she applied the solution appropriate for natural hair, and also applied the heat for the length of time usually given natural hair.

Error is assigned to the refusal of the court to permit the operator who treated plaintiff's hair to answer the following questions after she had stated she had used the same machine and the same solution on other patrons the same day:

"Q. Did any result occur to those other patrons that occurred to Mrs. Zimmerman?

"Q. You may state whether or not the wave given to those patrons was a satisfactory wave?

"Q. You may state whether or not the hair of those patrons was injured or destroyed in any way?"

Similar questions were asked with reference to the use of the machine the next day with the same solution and application of heat for the same length of time. Counsel for defendant stated his offer of proof was as to the use of the same machine, the same solution applied to "hair upon which no restoratives or dyes or peroxide had been used." The objection to the evidence was that it was incompetent, irrelevant, and immaterial. The purpose as stated by counsel for defendant at the trial was to show "that this machine was in perfect working condition," that "the solution was the proper solution," and that the "application of the heat was the ordinary and customary time of the application of heat."

There is no allegation by plaintiff that the electric machine was not in perfect working condition, nor that its use would not produce the desired effect if used with ordinary The negligence alleged in the complaint is that defendant "carelessly, negligently and unskillfully applied said electrical appliances to the hair and scalp of plaintiff," resulting in the burning of her hair and injury to her scalp. This is an allegation in general terms which, while not to be commended, is sufficient, in the absence of attack by special demurrer, to permit the introduction of evidence as to the specific acts of negligence relied on. *Freedman* v. *Denhalter Bottling Co.*, 54 Utah 513, 182 P. 843.

The evidence shows that the injury was caused by the use of the wrong chemical solution and the application of heat for a longer time than appropriate for hair which had been treated with a bleaching solution. The treatment given was that ordinarily given to natural hair. It was admitted by the evidence on both sides that plaintiff's hair had been treated and was not what is called natural hair. By the evidence the issue was narrowed to the question whether plaintiff had told the defendant that she had used peroxide on her hair. Plaintiff testified that she had used peroxide and that she informed the defendant of the fact before the

electric apparatus was applied to her hair. Defendant's testimony was to the effect that plaintiff was asked if she had used dyes, restoratives, or tonics, but that she said she had not, and that she was then given the treatment applicable to natural hair. This issue was submitted to the jury by appropriate instruction.

In view of the pleadings and the evidence that plaintiff's hair had been treated by bleaching solutions, no relevant purpose would be served by attempting to prove the result of use of the same apparatus with the same solution with heat applied for the same length of time on natural hair. Where the evidence of similar occurrences is material and relevant, it must be shown that all the essential physical conditions of the two occasions were identical. 22 C. J. 751. No offer was made to show the use of this machine on other hair in the same condition as plaintiff's. Appellant urged that the testimony was admissible under the rule stated in 45 C. J. § 801 (a), p. 1238, which reads in part as follows:

"In view of the presumption of the persistence of conditions of a continuing nature once shown to exist, evidence of the condition of a place, property, or appliance at or from which an injury for which damages are sought is alleged to have occurred, within a reasonable time prior to such injury, is admissible in a proper case to show the character or condition of such place, property, or appliance at the time of the injury, or to show notice of such condition to the person charged."

The cases cited in appellant's brief are to similar effect. It seems to us obvious that this rule is not applicable to the circumstances of this case, since no question is raised as to the perfect working condition of the machine, but only to the application or use of the machine and treatment as applied to plaintiff's hair. In any event, the proffered testimony was merely cumulative and its exclusion not prejudicial, since the defendant had himself testified without objection that the machine had been used

on other patrons without bad effect, and this testimony was not disputed or contradicted. His testimony is as follows:

"Q. Is there anything wrong with that machine in any way? A. No.

"Q. Was it kept right in use and applied to other people? A. That is well taken care of to-day. Those machines are looked over every day and examined every day. All the equipment is examined daily.

"Q. Was the same kind of solution which had been used upon Mrs. Zimmerman used upon other people that day and the following day in your establishment? A. Aboslutely.

"Q. And did any such result occur to any of the other patrons on that day or the following day that occurred to Mrs. Zimmerman? A. No, sir.

"Q. When you used that machine and the same solution? A. No, sir."

The instruction complained of is that in which the trial court instructed the jury "if the defendant did possess the skill which ordinarily characterizes his specialty, and carelessly and negligently failed to exercise it in this case, in the treatment of plaintiff's hair, and plaintiff's hair was injured, and that such carelessness was the proximate cause of injury to plaintiff," she would be entitled to recover. It is contended that this instruction leaves it open to the jury to speculate with respect to how the injury occurred and to consider matters outside of the issues, in that it submits to the jury carelessness "in the treatment of plaintiff's hair," whereas such carelessness should be confined to the application of the electrical appliances to plaintiff's hair. This is too technical a refinement to warrant a reversal of the judgment.

While some of defendant's requests for instructions, refused by the court, might well have been given, yet the charge to the jury fairly and adequately covered the defendant's theory of the case.

The judgment is affirmed, with costs to respondent.

CHERRY, C. J., and EPHRAIM HANSON, J., concur.

ELIAS HANSEN, J.

I dissent. The negligence charged in the complaint was that defendant carelessly, negligently, and unskillfully applied electrical appliances to plaintiff's hair and scalp. The injury concerning which she complains was a severely burned scalp and overbaked hair resulting in her head becoming blistered and her hair falling off and coming out, thus causing plaintiff great pain and suffering and mental distress and anguish. As I read the record which is brought here for review, neither the pleadings, the evidence, nor the instructions which the court gave to the jury support the views expressed in the prevailing opinion that "the issue was narrowed to the question whether plaintiff had told the defendant that she had used peroxide on her hair." Plaintiff complains, not only because her hair was overbaked, but also because her scalp was burned, causing her great pain and suffering. She testified not only that her hair was rendered streaked and so brittle that much of it came out, but also that as a result of the treatment her scalp was blistered and that she became sick. She further testified that she suffered not only mental distress and anguish but also great physical pain.

Among the instructions which the learned trial judge gave to the jury are the following:

In instruction No. 10:

"You are instructed that if you find, from a preponderance of the evidence, that plaintiff was injured, and that such injury was the result of negligence on the part of said defendant, or that the defendant could have prevented such injury by the exercise of ordinary care, and that such negligence, if any, was the proximate cause of such injury to plaintiff, if any, your verdict must be for the plaintiff; but unless you do so find, your verdict must be for the defendant."

In instruction No. 12:

"In this connection you are instructed that when a thing which causes injury is shown to be under the exclusive control of the defendant of his employees or agents, and the injury is such as, in the ordinary course of things, does not occur if one having such control

uses proper care, it affords reasonable evidence in the absence of an explanation that the injury arose from the defendant's want of care. This inference, however, as has been stated, may be explained by the defendant, but in determining whether or not the plaintiff has sustained the burden of proving such negligence by the preponderance of the evidence, you may take into consideration the circumstances surrounding the happening of the injury complained of, as well as any inference that may propery be deduced from such circumstances."

In instruction No. 15:

"If you find from the evidence that the plaintiff is entitled to recover as alleged in her complaint, then in estimating the plaintiff's damages you may take into consideration, if shown by the evidence, the natural and probable consequences or results of such injury, and the pain and suffering or mental anguish caused thereby, as well as any embarrassment or humiliation suffered by her."

Defendant offered evidence to show that, immediately before and immediately after plaintiff's hair was treated, the natural hairs of other women were given the same treatment by the same operator in the same manner for the same length of time with the same appliances in the same condition as that given to plaintiff's hair, and that no evil results followed in the other treatment. Plaintiff objected to the evidence so offered. The objection was sustained. The ruling is assigned as error. It is said in 22 C. J. 751-753:

"Evidence of similar occurrences is admitted where it appears that all the essential physical conditions on two occasions were identical; for under such circumstances the observed uniformity of nature raises an inference that like causes will produce like results, even though there may be some dissimilarity of conditions in respect to a matter which cannot reasonably be expected to have affected the result. On like principles, other occurrences have been deemed relevant where the essential conditions are similar, although the law of uniformity in action underlying the relevancy is not natural but legal. The burden rests upon the party offering the evidence to satisfy the court that the necessary similarity of conditions exists, and in the absence of such a showing the evidence will be rejected. The action of the court in admitting such evidence involves no finding with respect thereto except that sufficient similarity has been shown to warrant its reception."

A reference to some of the testimony offered at the trial will, as I think, show that this case is within the rule announced in the text just quoted. Plaintiff testified that, when the electrical appliances were adjusted, she was given a watch to observe the time and inform Mrs. Clrak when five minutes had elapsed. In about one and one-half or two minutes after the electricity was applied, plaintiff informed Mrs. Clark that the appliances were burning; that Mrs. Clark stated that it was necessary to continue the treatment for a period of five minutes; that before the five minutes had elapsed other similar complaints were made by the plaintiff, to which Mrs. Clark made similar replies. Mrs. Clark testified that no complaints were made by the plaintiff during the time she was being treated. The evidence showed without conflict that the same amount of heat and the same electrical current is used in giving a permanent wave without regard to whether the hair is natural or has been treated with a dye, bleaching agent, or restorative. The only difference between treatment given natural hair and hair which has been dyed or bleached lies in the solutions which are applied to the hair and the length of time required for the hair to remain in the electrical appliances. In the case of natural hair, electrical appliances such as those used by the defendant must be kept on the hair for five minutes. In the case of hair which has been dyed or bleached, the time required is from two and one-half to three minutes. According to plaintiff's testimony, her scalp was being burned within one minute and a half or two minutes after the electrical appliances were attached to her hair. Thus the time for steaming dyed or bleached hair had not expired when plaintiff claims her scalp began to burn. There is nothing in the evidence which shows, or tends to show, that the application of the wrong solution to hair is likely to burn the scalp. Plaintiff made no such claims, and, if such a claim had been made upon this record, it would have been wholly without support in the evidence. If the jury found that plaintiff's scalp was burned and she was rendered sick by the treat-

ment she received, such finding could be justified only upon the theory that the electrical appliances were either out of repair of improperly operated. The trial court evidently held such view, otherwise the instructions heretofore quoted would be wholly without support in the evidence. It will be noted that, under the law stated in the foregoing citation, the mere fact that "there may be some dissimilarity of conditions in respect to the matter which cannot reasonably be expected to have affected the result," does not justify the exclusion of the evidence where the essential physicial conditions on the two occasions were identical. The fact that plaintiff's hair had been treated with peroxide some months before the occasion in question could not, under the evidence in this case, have had anything to do with the burning of plaintiff's scalp or with causing her to become sick as a result of the treatment. Moreover, under the pleadings and under the instructions of the court, the jury may have found that the injury to plaintiff's hair was the result of the negligent manner in which the electrical appliances were used in giving a permanent wave to plaintiff's hair without regard to whether her hair had or had not been dyed, bleached, or treated with a restorative. The rejected evidence was calculated to show that the electrical appliances were in proper repair and that no ill effects could be expected to result from the manner in which they were used on plaintiff's hair.

As a defense, defendant was entitled to show, if he could, not only that plaintiff's injury was the result of her misinforming the defendant of the fact that she had used peroxide on her hair, but he was also entitled to show that he was free from negligence in using the electrical appliances upon her hair. Evidence tending to show that no evil effects resulted from the use of the same electrical appliances while in the same condition and when used in the same manner upon other patrons would tend to establish the fact that the defendant was not negligent on the occasion in question. Nor, in my opinion, may it be said that the ruling of the court in rejecting the proffered evidence was not prejudicial

on the theory that such evidence was merely cumulative. It is true that Mrs. Clark had, without objection, been permitted to answer questions somewhat similar to those objected to. Defendant, however, was not permitted to fully pursue the inquiry as to the use that had been made of the appliances which were used on plaintiff. The objection to the proffered testimony was not based upon the ground that Mrs. Clark had theretofore testified concerning the matter. By the ruling made, defendant was precluded, not only from fully pursuing the inquiry from Mrs. Clark, but likewise precluded from securing such testimony from any other witness which the defendant may have had.

I am also of the opinion that instruction No. 12 is open to the objection urged by the defendant; namely, that it permitted the jury to find the defendant guilty of negligence not charged in the complaint. The objection urged against that instruction is especially apparent when viewed in the light of that part of instruction No. 10 heretofore quoted. It has become the settled law in this, as well as other, jurisdictions generally, that negligence relied upon by the plaintiff for a recovery must be both alleged and proved. The instruction of the court should confine the attention of the jury to the issues made by the pleadings and the evidence. *Holt* v. *Pearson,* 12 Utah 63, 41 P. 560; *Lochhead* v. *Jensen,* 42 Utah 99, 129 P. 347; *Fowkes* v. *J. I. Case Threshing Mach. Co.,* 46 Utah 502, 151 P. 53; *Kendall et al.* v. *Fordham et al.* (Utah) 9 P. (2d) 183; *Industrial Commission of Utah et al.* v. *Wasatch Grading Company* (Utah) 14 P. (2d) 988. The negligence charged was that the electrical appliances were negligently and unskillfully applied to plaintiff's hair and scalp. Under the instruction complained of, the attention of the jury was not called to the negligence charged. None of the instructions given limited the jury to a consideration of the negligence charged in the complaint. By some of his requests, the defendant requested that the jury be limited to a consideration of the negligence charged. Such requests were refused, and the failure of the

court to give the same is assigned as error. Under the instructions given, the jury was at liberty to find the defendant guilty of negligence without regard to the allegations of the complaint.

The judgment should be reversed and a new trial granted.

STRAUP, J. (dissenting).

By the complaint it is alleged that the defendant was engaged in the business of hairdresser, and held himself out, and his employees, "to be skilled in treating the scalp and hair by means of electrical contrivances and appliances" to give what is commonly known as a "permanent wave." It then is alleged that the defendant was employed to treat the plaintiff's "hair and scalp" by the use and application of such electrical appliances to give her a permanent wave, "but carelessly, negligently and unskillfully applied said electrical appliances to the hair and scalp of plaintiff, said appliances being then and there under the operation and control of defendant, his agents and employees, in such a manner as to severely burn plaintiff's scalp and hair and to cause an overbaking thereof to the extent of causing plaintiff's head to become blistered and her hair to fall off and come out, causing plaintiff great pain and suffering and mental distress and anguish," to her damage in the sum of $5,000.

Among other things, complaint is made that the court, in refusing the defendant's requests to charge, and in charging the jury and in submitting the case to them, did not restrict the finding of the jury on the subject of negligence to the acts and commissions charged in the complaint, and permitted them to render a verdict for any injury sustained by the plaintiff, irrespective of the charged negligent acts. In such particular the court charged the jury in paragraphs 10 and 12 set forth in the dissenting opinion of Mr. Justice HANSEN. The court by paragraph 11 further charged that "you are further instructed that if the defendant did possess

the skill which ordinarily characterizes his specialty, and carelessly and negligently failed to exercise it in this case, in the treatment of plaintiff's hair, and plaintiff's hair was injured, and that such carelessness was the proximate cause of the injury to the plaintiff," she was entitled to recover.

As is seen, paragraph 12 was submitted on the theory or doctrine of res ipsa loquitur. By paragraphs 10 and 11, the case was submitted upon the same theory or doctrine. It is my opinion that the doctrine of res ipsa loquitur has here no application. *Baxter* v. *Snow*, 78 Utah 217, 2 P. (2d) 257. By paragraph 10 all that the jury were required to find to render a verdict for the plaintiff was "that plaintiff was injured, and that such injury was the result of negligence" on the part of the defendant, regardless of whether the negligence consisted of the acts and omissions or commissions alleged in the complaint; regardless of whether the injury resulted from negligently and unskillfully applying the electrical appliances to the hair and scalp of the plaintiff, as in the complaint alleged, burning the scalp and hair, overbaking them, causing the head to become blistered and the hair to fall off and come out. In other words, if the plaintiff "was injured," she was entitled to recover, no matter what the negligent acts or commissions or omissions of the defendant were, whether those alleged in the complaint or otherwise. Similar observations may be made as to paragraph 11 of the charge. So too and more especially of paragraph 12. Such theory or doctrine that the jury was at liberty to find the defendant guilty of any negligence, of any want of care, whether as characterized by the complaint or not, runs through the main portion of the charge. The plaintiff, to recover, was required to do so on the acts and commissions of negligence alleged in the complaint and not otherwise; and the jury ought to have been so instructed. Such doctrine is well settled and applies here as well as in other cases of negligence. I see no reason to make a distinction because the defendant is a hairdresser or a cosmetologist.

While no exception was taken to paragraph 10 of the charge, yet specific exceptions were taken to paragraphs 11 and 12. Still, in determining the theory upon which the case was submitted to the jury, paragraph 10 may be considered in connection with paragraphs 11 and 12 to which exceptions were taken.

Being of the opinion, as I am, that the case was submitted to the jury on a wrong theory or doctrine, I think the judgment should be reversed and a new trial granted.